cv. BMK

# ORIGINAL

Lawrence W. Cohn (1376)
Attorney at Law
75-109 Lolo Lane
Kailua Kona, HI 96740
Telephone: (808) 324-1611
Facsimile: (808) 322-6168
elcohnhead@hawaii.rr.com

*Counsel for Plaintiff*

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 08 2013

at __1__ o'clock and _40_ min. _P_ M.
SUE BEITIA, CLERK

[Additional Counsel in Signature Block]

## UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| DENISE HOWERTON Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CARGILL, INC., <br><br> Defendant. | No.  CV13  00336 BMK <br><br> CLASS ACTION COMPLAINT <br><br> DEMAND FOR JURY TRIAL |

Plaintiff Denise Howerton ("Plaintiff" or " Plaintiff Howerton") alleges the following based upon personal knowledge as to herself and her own acts, and upon information and belief and the investigation by Plaintiff's counsel, which included, among other things, a review of public documents, marketing materials, and announcements made by Cargill, Inc. ("Defendant" or "Cargill") as to all other matters. Plaintiff believes that substantial additional evidentiary support exists for the allegations set forth herein and will be available after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This action seeks to remedy the unfair, deceptive, and unlawful business practices of Cargill with respect to the marketing, advertising, labeling, and sales of Truvía® Natural Sweetener (the "Product" or "Truvía® Natural Sweetener" or "Truvía").

2.      Agribusiness behemoth Cargill is in the business of creating innovative and reformulated food and beverage *ingredients*. For instance, Cargill's Sweetener Division develops and manufactures ingredients that provide "sweet taste that replaces the function of sucrose in food and beverages."[1]

---

[1]      *See*      http://www.cargillfoods.com/na/en/products/sweeteners/specialty-sweeteners/index.jsp  (last visited June 7, 2013).

3.     Cargill recognizes consumers are increasingly health conscious.[2] To capitalize on this market trend, Cargill joined forces with The Coca-Cola Company ("Coca-Cola") to develop a purportedly natural, sweeter-than-sugar, non-caloric sweetening ingredient for food and beverages. Cargill and Coca-Cola publicly revealed the results of this ultra-secret endeavor in 2008 – an extract of the leaf of the stevia plant, high purity *Rebaudioside A* ("Reb A"). Cargill uses Reb A as an ingredient in its tabletop sweetener product, branded as Truvía® Natural Sweetener, touting it as the first ***natural*** sugar substitute, developed "[i]n response to strong consumer demand for a natural, zero-calorie way to sweeten foods and beverages . . . ."[3]

4.     Since as early as 2008 ("Class Period"), Cargill has manufactured, distributed, and sold Truvía and consistently has marketed, advertised, and labeled Truvía as a natural sweetener primarily made from the stevia plant.

5.     As part of a scheme to make Truvía more attractive to consumers, boost its sales, and ultimately increase its profits, Cargill uses terms such as "Nature's Calorie-Free Sweetener" and "Truvía® sweetener comes from nature,"

---

[2]   *See* Cargill 2012 Annual Report at 10-11 available at http://www.cargill.com/wcm/groups/public/@ccom/documents/document/na30659 58.pdf, at 10-11 (last visited June 7, 2013).

[3]   *See* http://www.cargill.com/news/releases/2008/NA3007625.jsp (last visited June 7, 2013).

and natural imagery such as the leaves of the stevia plant in labeling, advertising, and marketing materials. The use of these terms and natural imagery is designed to, and does, induce consumers, such as Plaintiff and the members of the putative classes, into believing that Truvía is a natural sweetener primarily made from the stevia plant that does not contain ingredients that are either synthetic or harshly chemically processed and, therefore, is a healthy choice and is superior to competing sugar-alternative sweeteners that do not claim to be natural.

6.     However, Defendant's labeling, advertising, and marketing campaign is false and misleading because: (1) Cargill touts the stevia plant as the reason Truvía is natural, when in fact the stevia-derived ingredient, Reb A, is not the natural crude preparation of stevia, but rather is a highly chemically processed and purified form of stevia leaf extract; (2) the stevia-derived Reb A comprises *only 1%* of Truvía; (3) the main ingredient, erythritol, which Cargill also purports to be a natural ingredient derived through natural processes, is not made like it is in nature, but rather is synthetically made; and (4) Cargill describes the process of obtaining stevia leaf extract as "similar to making tea," but does not tell the consumer that Cargill then adds ethanol, methanol, or rubbing alcohol to this so-called "tea" in a patented multi-step process to purify it. In short, Truvía is not made primarily from the stevia plant, it is predominantly made of erythritol, and contains only a minute quantity of stevia-derived Reb A (not natural crude stevia);

the erythritol used is not natural, it is synthetic; and, the stevia-derived Reb A is harshly purified through chemical processes. As a result, no reasonable consumer would consider Truvía to be a natural product.

7.   When purchasing Truvía, Plaintiff relied on Defendant's misrepresentations that Truvía is a natural sweetener primarily made from the stevia plant. Plaintiff and the Classes paid a premium for Truvía over comparable sugar-alternative sweeteners that did not purport to be natural. Truvía is consistently more expensive per packet than sugar-alternative competitors, like Sweet 'N Low and Splenda, costing ***approximately 300% more per packet than Sweet 'N Low and 67% more per packet than Splenda***. Plaintiff would not have purchased Truvía had she known the truth. Plaintiff suffered an injury by purchasing the Product at inflated prices. Plaintiff did not receive a natural sweetener primarily made from the stevia plant; rather, she received a product that is made predominantly of a synthetic ingredient with only a miniscule amount of Reb A, which itself is harshly chemically purified, in contradiction to Defendant's representations.

8.   Defendant's conduct of falsely marketing, advertising, labeling, and selling Truvía as a natural sweetener primarily made from the stevia plant constitutes unfair, unlawful, and fraudulent conduct; is likely to deceive members of the public; and is unethical, oppressive, unscrupulous, and/or substantially

4

injurious to consumers, because, among other things, it misrepresents the characteristics of goods and services. As such, Plaintiff seeks relief in this action individually and as a class action on behalf of all purchasers in the United States of Defendant's Truvía (the "Class"). Plaintiff also seeks relief in this action individually and as a class action on behalf of a subclass of all purchasers in Hawaii of Defendant's Truvía (the "Hawaii Class").

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over the claims asserted herein individually and on behalf of the class pursuant to 28 U.S.C. §1332, as amended in February 2005 by the Class Action Fairness Act. Subject matter jurisdiction is proper because: (1) the amount in controversy in this class action exceeds five million dollars, exclusive of interest and costs; and (2) a substantial number of the members of the proposed classes are citizens of a state different from that of Defendant. Personal jurisdiction is proper as Defendant has purposefully availed itself of the privilege of conducting business activities within this District.

10. Defendant, a citizen of Minnesota and Delaware, has distributed, marketed, advertised, labeled, and sold Truvía, which is the subject of the present complaint, in this District. Thus, under 28 U.S.C. §§1391(c)(2) and (d), Defendant is deemed to reside in this District. As such, venue is proper in this judicial district under 28 U.S.C. §1391(b)(1) because Defendant is deemed to reside in this District

and under 28 U.S.C. §1391(b)(2) because Defendant conducts business in this District and a substantial part of the acts or omissions giving rise to the claims set forth herein occurred in this District.

## PARTIES

11.    Plaintiff Howerton is a citizen of Hawaii and an individual consumer. During the Class Period, Plaintiff Howerton purchased Truvía in March 2013 at a Walmart, Kailua-Kona, Hawaii.    Prior to purchasing the Product, Plaintiff Howerton read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Truvía packaging.   For each purchase, she understood that she was paying for a natural sweetener primarily made from the stevia plant and was deceived when she received a product that is made predominantly of synthetic erythritol and with only a miniscule amount of the stevia-derived Reb A, which is purified through a harsh chemical process.   During the Class Period, Plaintiff Howerton also viewed and relied on Truvía television commericals, which represented the Product as a natural sweetener primarily made from the stevia plant. But for Defendant's misrepresentations, Plaintiff Howerton would not have purchased Truvía, and/or would not have paid a premium for Truvía over the price of other sugar-alternative sweeteners that are not promoted as natural.   Plaintiff Howerton thus was damaged by Defendant's practice.

12.    Defendant Cargill is a privately held Delaware corporation, headquartered at 15407 McGinty Rd. West, Wayzata, Minnesota.   Defendant distributes, markets, advertises, and sells Truvía in Hawaii and throughout the rest of the United States.

## ALLEGATIONS OF FACT

### A.    Defendant's False and Misleading Statements

13.    Truvía® Natural Sweetener is manufactured, distributed, marketed, advertised, and sold by Cargill to consumers as a tabletop packet sweetener for food and beverages.

14.    Throughout the Class Period, Cargill engaged in, and Plaintiff and members of the Classes were exposed to, a long-term advertising campaign in which Cargill utilized various forms of media, including, but not limited to, print advertising on the Truvía label and television commercials.   Since Cargill announced the launch of Truvía® Natural Sweetener in 2008, Cargill consistently has made certain representations in its labeling, advertising, and marketing that are false and misleading.   To accomplish this, Cargill uses an integrated, nationwide messaging campaign to consistently convey the deceptive and misleading message that Truvía is a natural sweetener primarily made from the stevia plant.   This message, *at a minimum*, is conveyed at the point of purchase on the Truvía

packaging and labeling.   Thus, all consumers are exposed to the same message whether viewed in television commercials or on the label.

15.    During the Class Period, Plaintiff first was introduced to Truvía through television commercials that featured an image of the stevia plant.

16.    Specifically, Cargill states on Truvía® Natural Sweetener packaging and labeling:

Truvía® Nature's Calorie-Free Sweetener

Truvía® natural sweetener[4]

Truvía® sweetener comes from nature:

> Stevia leaf extract is born from the sweet leaf of the stevia plant, native to South America.   Dried stevia leaves are steeped in water, similar to making tea.   This unlocks the best tasing part of the leaf which is then purified to provide a calorie-free sweet taste.

> Erythritol is a natural sweetener, produced by a natural process, and is also found in fruits like grapes and pears.

---

[4] This phrase is included on the packaging as follows:   One packet of Truvía® natural sweetener provides the same sweetness as two teaspoons of sugar.





17.    These statements mislead the consumer into believing that the Product is a natural sweetener primarily made from the stevia plant, when, in fact, the Product is composed of predominantly synthetic erythritol and only a minute

quantity of stevia-derived Reb A, which is purified through a harsh chemical process and is not the same as natural crude stevia.

18.    Plaintiff and the Classes reasonably understood the Product's packaging to mean that the Product is a natural sweetener primarily made from the stevia plant and relied on such representations in making their purchases of the Product.

**B.    Truvía Is Not Primarily Made from the Stevia Plant**

19.    Although Cargill leads consumers to believe that Truvía is primarily made from the stevia plant, Truvía actually is made predominantly with synthetic erythritol.  Plaintiff's calculations indicate that Truvía is ***approximately 99%*** synthetic erythritol.  That Truvía is almost entirely made with a synthetic ingredient is material to consumers, including Plaintiff and members of the Classes, who are seeking to consume natural products.

20.    No reasonable consumer would know or have reason to know that Truvía contains such a ***minute*** amount of the stevia-derived ingredient, Reb A. The quantity of Reb A in Truvía is within the exclusive knowledge of Cargill and is not known to ordinary consumers, including Plaintiff and members of the Classes.  Cargill actively conceals this material fact from consumers, including Plaintiff and members of the Classes.  Cargill's representations that Truvía is made from the stevia plant is, at best, an incomplete partial disclosure.

10

C.   **Truvía Is Not a *Natural* Sweetener**

1.   **Reb A Is Not the Same as Natural Crude Stevia**

21.   Not only is there but a miniscule amount of stevia in Truvía, but the highly processed, high purity stevia extract Reb A in Truvía is not what most consumers, including Plaintiff and members of the Classes, consider to be natural stevia.

22.   Stevia typically refers to the crude stevia preparation (powder or liquid), which is obtained through the ***natural process*** of drying and crushing stevia leaves and then extracting them with hot water.   This natural crude stevia extract can be purchased as a supplement in health food stores.   Reb A is a highly purified form of stevia extract, which (as discussed below) is obtained through a harsh and unnatural chemical purification process.   So, while the highly processed, high purity Reb A in Truvía is derived from the stevia plant, it is not the same as the natural stevia that is sold in the U.S. as a dietary supplement.   This distinction is material to consumers, including Plaintiff and members of the Classes, who are seeking to consume natural products.

23.   No reasonable consumer would know, or have reason to know, that the stevia extract in Truvía is highly processed, high purity Reb A and not the natural crude preparation of stevia.   This information is within the exclusive knowledge of Cargill and is not known to ordinary consumers, including Plaintiff

and members of the Classes.   Cargill actively conceals this material fact from consumers, including Plaintiff and members of the Classes.   Cargill's representation that Truvía is made from the stevia plant is misleading.

### 2.   The Unnatural Processing and Synthetic Manufacturing of the Ingredients in Truvía

#### a. Cargill Creates High Purity Reb A Through a Harsh Chemical Process that Includes Washing Crude Stevia Extract with Ethanol, Methanol, or Rubbing Alcohol

24.   Cargill creates high purity Reb A by first extracting the crude stevia from the stevia leaf. I. Prakas, et. al., *Development of rebiana, a natural, non-caloric sweetener*, Food Chem. Toxicol., 2008 Jul;46 Suppl 7:S75, S76-77 (2008). Epub 2008 May 16.  The stevia leaves are dried, crushed, and extracted with water, followed by precipitation and filtration of the stevia extract.  The steviol glycosides (which are the sweet components of the stevia leaf extract) are dissolved in the primary extract while residual plant components are suspended in the primary extract.  Unwanted plant components are removed by "flocculation."  Flocculation is the process of "flaking" the suspended solids out of the primary extract while leaving behind what is dissolved in solution.  This process results in crude stevia extract.

25.   The crude stevia extract is then processed to concentrate the steviol gylcosides.   In this process, an adsorption resin is used to trap the steviol glycosides of the leaf extract.  The resin is washed with methanol or ethanol to

release the glycosides.  The extract is then concentrated by evaporation or with an adsorption resin, followed by drying to yield a steviol glycoside primary extract. The dried extract may be stored and transported in this form before final purification.

26.    The stevia concentrate is then purified selectively for Reb A by stripping away all the steviol glycosides except the Reb A through a multi-step patented process.    U.S. Patent No. 0292582 (filed Feb. 12, 2007).    In the purification process, the primary extract is redissolved in a water-alcohol solvent mixture and further processed by filtration, crystallization, and centrifugation steps.  The resulting preparation of crystals is rinsed with ethanol and vacuum-dried to yield the final purified Reb A product.  This purification process results in a high purity (97%) mixture of Reb A and polymorphs of Reb A.

27.    That Reb A is obtained through a harsh chemical process is material to consumers, including Plaintiffs and members of the Classes, who are seeking to consume natural products.    Consumers, including Plaintiff and members of the Classes, do not consider a product with an ingredient that is harshly chemically processed to be natural.

28.    For instance, the U.S. Department of Agriculture ("USDA") takes into account the level of processing in its policy on natural claims on food labeling. The USDA defines a product as "natural" when "(1) The product does not contain

13

any artificial flavor or flavoring, coloring ingredient, or chemical preservative (as defined in 21 CFR 101.22), or any other artificial or synthetic ingredient; and (2) the product and its ingredients are not more than **minimally processed**." *See* U.S. Department of Agriculture, Food Safety and Inspection Serv., "Natural Claims" in FOOD STANDARDS AND LABELING POLICY BOOK (revised August 2005). According to the USDA, minimal processing may include: (a) those traditional processes used to make food edible or to preserve it or to make it safe for human consumption, *e.g.*, smoking, roasting, freezing, drying, and fermenting. *Id.*

29.    No reasonable consumer would know, or have reason to know, that Reb A is achieved through a harsh chemical process. This information is within the exclusive knowledge of Cargill and is not known to ordinary consumers, including Plaintiff and members of the Classes. Cargill actively conceals this material fact from consumers, including Plaintiff and members of the Classes. Cargill's representation that Truvía is made from the stevia plant and that making stevia is "like making tea" is misleading.

### b. Cargill Synthetically Manufactures the Erythritol It Uses in Truvía

30.    Cargill represents on the packaging to consumers that erythritol "is a natural sweetener, produced by natural processes" and that it is "found in fruits like grapes and pears." What Cargill fails to disclose is that the erythritol Cargill uses in Truvía is synthetic.

31.   Cargill manufactures Truvía's synthetic erythritol in a patented process (U.S. Patent No. 0037266 (filed June 21, 2006)) by first chemically extracting starch from genetically modified corn and then converting the starch to glucose through the biochemical process of enzymatic hydrolysis.  The glucose is then fermented utilizing *moniliella pollinis*, a yeast.  The fermentation broth is sterilized, filtered, and purified to produce erythritol crystals.  This patented process is not the same process that is used in nature to produce the erythritol that is "found in fruits like grapes and pears."

32.   That the main ingredient in Truvía is synthetic is material to consumers, including Plaintiff and members of the Classes, who are seeking to consume natural products.  Consumers, including Plaintiff and members of the Classes, do not consider a product with a synthetic ingredient to be natural.

33.   For instance, while the U.S. Food and Drug Administration ("FDA") has not developed a definition for use of the term "natural," the agency does not object to the use of the term if the food does not contain added color, artificial flavors or ***synthetic substances***.  *See* Food Labeling:  Nutrient Content Claims, General Principles Petitions, Definition of Terms, 56 Fed. Reg. 60421, 60466 (Nov. 27, 1991).[5]  Similarly, as stated above, the U.S. Department of Agriculture

---

[5]  *See also* http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm (last visited June 7, 2013).

defines a product as "natural" when "(1) The product does not contain any artificial flavor or flavoring, coloring ingredient, or chemical preservative (as defined in 21 CFR 101.22), or any other artificial or *synthetic ingredient*; and (2) the product and its ingredients are not more than minimally processed." *See* U.S. Department of Agriculture, Food Safety and Inspection Serv., "Natural Claims" in FOOD STANDARDS AND LABELING POLICY BOOK (revised August 2005).

34.     The term "synthetic" is defined as "of, relating to, or produced by chemical or biochemical synthesis; especially: produced artificially." *See* http://www.merriam-webster.com/dictionary/synthetic (Last visited June 7, 2013). Erythritol is a synthetic substance because it is made by man (not nature) through a biochemical process that is not the same as it is made in nature. Thus, erythritol cannot be considered a natural ingredient. Truvía is *99% erythritol*, and thus, it also cannot be considered a natural product.

35.     No reasonable consumer would know, or have reason to know, that the erythritol in Truvía is synthetic. This information is within the exclusive knowledge of Cargill and is not known to ordinary consumers, including Plaintiff and members of the Classes. Cargill actively conceals this material fact from consumers, including Plaintiff and members of the Classes. Cargill's representation that erythritol "is a natural sweetener, produced by natural processes" and that it is "found in fruits like grapes and pears" is misleading.

**D.    Consumers Desire Natural Foods**

36.    Defendant also realizes that consumers are increasingly aware of the relationship between health and diet[6] and, thus, understands the importance and value of descriptors and labels that convey to consumers that a product is natural when considering whether to buy foods.

37.    American consumers are health conscious and look for wholesome, natural foods to keep a healthy diet.  Product package labels are vehicles that convey food quality and nutrition information to consumers that they can and do use to make purchasing decisions.

38.    Surveys have shown that "natural" is one of the top descriptors consumers consider.  *See, e.g.*, David L. Ter Molen and David S. Becker, *An "All Natural" Dilemma: As the Market for "All Natural" Foods Continues to Grow, So Do the Risks for the Unwary* (Nov. 27, 2012) at 2, http://www.freeborn.com/assets/white_papers/02.12_white-paper-natural-food-update.pdf  (last visited June 7, 2013).  Consumers desire natural ingredients in food products for a myriad of reasons, including wanting to live a healthier lifestyle, perceived benefits in avoiding disease, and other chronic conditions, as well as to increase weight loss and avoid chemical additives in their food.  *See,*

---

[6] *See* Cargill 2012 Annual Report at 10-11,
http://www.cargill.com/wcm/groups/public/@ccom/documents/document/na30659
58.pdf, at 10-11 (last visited June 10, 2013).

*e.g.,* Food Marketing Institute, *Natural and Organic Foods* (September 2008) at 1,

http://www.fmi.org/docs/media-backgrounder/natural_organic_foods.pdf?sfvrsn=2

(last visited June 10, 2013)).   As a result, consumers are willing to pay a higher

price for higher quality foods, such as those that are natural.   *See, e.g.,* Context

Marketing, *Beyond Organic: How Evolving Consumer Concerns Influence Food

Purchase* (Oct. 2009) at 6, http://www.contextmarketing.com/insights.html (last

visited June 10, 2013).

39.   Although this segment of the health food market was once a niche

market, natural foods are increasingly becoming part of the mainstream food

landscape.   According to Natural Foods Merchandiser, a leading information

provider for the natural, organic, and healthy products industry, the natural food

industry enjoyed over $81 billion in total revenue in 2010, and grew over 7% in

2009. *See Natural and Organic Products Industry Sales Hit $81 Billion, Natural

Foods   Merchandiser* (June   1,   2011),   http://www.prnewswire.com/news-

releases/natural-and-organic-products-industry-sales-hit-81-billion-

122958763.html (last visited June 10, 2013).   The market for all natural and

organic foods grew 9% in 2010 to $39 billion, and 2010 sales were 63% higher

than sales in 2005.   http://www.marketwire.com/press-release/natural-and-organic-

food-and-beverage-market-to-double-by-2015-1525854.htm (last visited June 10,

2013).   Consumer demand for all natural and organic foods is expected to grow

103% between 2010 and 2015 with annual sales exceeding $78 billion in 2015.  *Id.*

40.    In order to capture and tap into this growing market and the hunger of

consumers for the perceived healthier, chemical-free benefits of natural foods,

Cargill labels Truvía as a natural sweetener primarily made from the stevia plant.

41.    A reasonable consumer understands a natural product to be one that

does not contain man-made, synthetic ingredients, is not subject to harsh chemical

processes, and is only minimally processed.

42.    Consumers lack the meaningful ability to test or independently

ascertain the truthfulness of food labeling claims such as "natural," especially at

the point of sale.  Consumers would not know the true nature of the ingredients

merely by reading the ingredient label; its discovery requires investigation beyond

the grocery store and knowledge of food chemistry beyond that of the average

consumer.  Thus, reasonable consumers must, and do, rely on food companies such

as Cargill to honestly report the nature of a food's ingredients, and food companies

such as Cargill intend and know that consumers rely upon food labeling statements

in making their purchasing decisions.   Such reliance by consumers is also

eminently reasonable, since food companies are prohibited from making false or

misleading statements on their products under federal law.

43.     Defendant unscrupulously capitalizes on consumers' heightened demand for natural products by deceptively labeling, advertising, and marketing Truvía.

## DAMAGES TO PLAINTIFF AND THE CLASSES

44.     Plaintiff purchased the Product based on Defendant's labeling, advertising, and marketing that the Product is a natural sweetener primarily made from the stevia plant.

45.     Defendant manufactured, distributed, and sold products that are misbranded.  Misbranded products cannot be legally manufactured, distributed, sold, or held, and have no economic value and are legally worthless as a matter of law.

46.     Moreover, Plaintiff and the members of the Classes would not have purchased and/or paid a premium to purchase the Product over comparable products that do not purport to be natural.

47.     As set forth in the chart below, the Product costs more than comparable products that do not purport to be natural.

| Product | Price | Price per packet | Premium paid per packet versus ... |
|---------|-------|------------------|------------------------------------|
| Truvía – 40 count box | $3.99 | $0.0998 | |
| Splenda – 50 count box | $2.99 | $0.0598 | $0.0400 |

| Sweet 'N Low – 100 count box | $2.49 | $0.0249 | $0.0749 |
|---|---|---|---|

## TOLLING OF THE STATUTE OF LIMITATIONS, FRAUDULENT CONCEALMENT, EQUITABLE TOLLING, AND CONTINUING VIOLATIONS

48.     Plaintiff did not discover, and could not have discovered, through the exercise of reasonable diligence the existence of the claims sued upon herein until immediately prior to commencing this civil action.

49.     Any applicable statutes of limitation have been tolled by Defendant's affirmative acts of fraudulent concealment and continuing misrepresentations, as the facts alleged above reveal.

50.     Because of the self-concealing nature of Defendant's actions and its affirmative acts of concealment, Plaintiff and the Classes assert the tolling of any applicable statutes of limitations affecting the claims raised herein.

51.     Defendant continues to engage in the deceptive practice, and consequently, unwary consumers are injured on a daily basis by Defendant's unlawful conduct.  Therefore, Plaintiff and the Classes submit that each instance that Defendant engaged in the conduct complained of herein and each instance that a member of any Class purchased Truvía constitutes part of a continuing violation and operates to toll the statutes of limitation in this action.

52.    Defendant is estopped from relying on any statute of limitations defense because of their unfair or deceptive conduct.

53.    Defendant's conduct was and is, by its nature, self-concealing.  Still, Defendant, through a series of affirmative acts or omissions, suppressed the dissemination of truthful information regarding their illegal conduct, and actively has foreclosed Plaintiff and the Classes from learning of their illegal, unfair, and/or deceptive acts.  These affirmative acts included concealing the amount of Reb A in Truvía, that Reb A is not the same as natural crude stevia extract, and that the erythritol Cargill uses in Truvía is synthetic.

54.    By reason of the foregoing, the claims of Plaintiff and the Classes are timely under any applicable statute of limitations, pursuant to the discovery rule, the equitable tolling doctrine, and fraudulent concealment.

## CLASS ACTION ALLEGATIONS

55.    Plaintiff brings this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and the Class defined as follows:

> All persons in the United States who purchased Truvía from its introduction in 2008 until the date notice is disseminated for personal or household use, and not for resale or distribution purposes. Specifically excluded from this Class are Defendant; the officers, directors, or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant. Also excluded are those who assert claims for personal injury as well as any federal, state, or local governmental

22

entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

56.   Plaintiff also brings this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all persons located within the state of Hawaii and on behalf of all persons located within the states with similar consumer protection laws, breach of express warranty laws and breach of implied warranty laws.

57.   The Classes are sufficiently numerous, as each includes thousands of persons who have purchased the Product.  Thus, joinder of such persons in a single action or bringing all members of the Classes before the Court is impracticable for purposes of Rule 23(a)(1).  The question is one of a general or common interest of many persons and it is impractical to bring them all before the Court.  The disposition of the claims of the members of the Classes in this class action will substantially benefit both the parties and the Court.

58.   There are questions of law and fact common to each Class for purposes of Rule 23(a)(2), including whether Defendant's labels and packaging include uniform misrepresentations that misled Plaintiffs and the other members of the Classes to believe the Product is natural and made primarily from the stevia plant.  The members of each Class were and are similarly affected by having purchased Truvía for its intended and foreseeable purpose as promoted, marketed,

advertised, packaged, and labeled by Defendant as set forth in detail herein, and the relief sought herein is for the benefit of Plaintiff and other members of the Classes.  Thus, there is a well-defined community of interest in the questions of law and fact involved in this action and affecting the parties.

59.   Plaintiff asserts claims that are typical of the claims of each respective Class for purposes of Rule 23(a)(3).  Plaintiff and all members of each respective Class have been subjected to the same wrongful conduct because they have purchased that Product, which is not natural as represented.  Plaintiff paid a premium for the Product, on the belief it was natural, over similar alternatives that did not make such representations.  Plaintiff and the members of each Class have thus all overpaid for the Product.

60.   Plaintiff will fairly and adequately represent and protect the interests of the other members of each respective Class for purposes of Rule 23(a)(4). Plaintiff has no interests antagonistic to those of other members of each respective Class.  Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature to represent her.  Plaintiff anticipates no difficulty in the management of this litigation as a class action.

61.   Class certification is appropriate under Rule 23(b)(2) because Defendant has acted on grounds that apply generally to each Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting each

Class as a whole.   Defendant utilizes an integrated, nationwide messaging campaign that includes uniform misrepresentations that misled Plaintiff and the other members of each Class.

62.   Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact substantially predominate over any questions that may affect only individual members of each Class.   Among these common questions of law and fact are:

a.   whether Defendant misrepresented or omitted material facts in connection with the promotion, marketing, advertising, packaging, labeling, and sale of Truvía;

b.   whether Defendant's labeling of Truvía is likely to deceive the members of each Class;

c.   whether Defendant's conduct is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;

d.   whether Defendant represented that Truvía has characteristics, benefits, uses, or qualities that it does not have;

e.   whether Defendant's acts and practices in connection with the promotion, marketing, advertising, packaging, labeling, distribution, and sale of Truvía violated the laws alleged herein;

f. whether Plaintiff and members of the Classes are entitled to injunctive and other equitable relief; and

g. whether Defendant was unjustly enriched by its conduct.

63. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the members of each respective Class. Similar or identical statutory and common law violations and deceptive business practices are involved. Individual questions, if any, pale by comparison to the numerous common questions that predominate.

64. The injuries sustained by Plaintiff and the members of each Class flow, in each instance, from a common nucleus of operative facts – Defendant's misconduct.

65. Plaintiff and the members of each Class have been damaged by Defendant's misconduct. The members of each Class have paid for a product that would not have been purchased in the absence of Defendant's deceptive scheme, or, alternatively, would have been purchased at a lesser price.

66. Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy. Members of each Class have suffered and will suffer irreparable harm and damages as a result of Defendant's wrongful conduct. Because of the nature of the individual claims of the members of each

Class, few, if any, could or would otherwise afford to seek legal redress against Defendant for the wrongs complained of herein, and a representative class action is therefore the appropriate, superior method of proceeding and essential to the interests of justice insofar as the resolution of claims of the members of each Class is concerned. Absent a representative class action, members of each Class would continue to suffer losses for which they would have no remedy, and Defendant would unjustly retain the proceeds of its ill-gotten gains. Even if separate actions could be brought by individual members of each Class, the resulting multiplicity of lawsuits would cause undue hardship, burden, and expense for the Court and the litigants, as well as create a risk of inconsistent rulings, which might be dispositive of the interests of the other members of each Class who are not parties to the adjudications and/or may substantially impede their ability to protect their interests.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**(Unjust Enrichment on Behalf of the Class, or in the Alternative, on Behalf of the Hawaii Class)**

67. Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

68.     Plaintiff brings this claim individually, as well as on behalf of members of the nationwide Class, under Hawaii law.  Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched.  At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state.  Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, Hawaii law applies to the claims of the Class.

69.     In the alternative, Plaintiff brings this claim individually as well as on behalf of the Hawaii Class.

70.     At all times relevant hereto, Defendant deceptively labeled, marketed, advertised, and sold Truvía to Plaintiff and the Class(es).

71.     Plaintiff and members of the Class(es) conferred upon Defendant non-gratuitous payments for Truvía that they would not have due to Defendant's deceptive labeling, advertising, and marketing.  Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class(es), with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff

and members of the Class(es) were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

72.     Defendant has been unjustly enriched in retaining the revenues derived from purchases of Truvía by Plaintiff and members of the Class(es), which retention under these circumstances is unjust and inequitable because Defendant misrepresented that Truvía is a natural sweetener primarily made from the stevia plant, when in fact it is not, which caused injuries to Plaintiff and members of the Class(es) because they paid a price premium due to the mislabeling of Truvía.

73.     Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and members of the Class(es) under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.  Thus, Defendant must pay restitution to Plaintiff and members of the Class(es) for its unjust enrichment, as ordered by the Court.

**SECOND CLAIM FOR RELIEF**
**(Plaintiff, on Behalf of Herself and the Hawaii Class, Alleges Violations of Haw. Rev. Stat. §§480-1 *et seq.*)**

74.     Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

75.     Plaintiff Howerton brings this claim individually and on behalf of members of the Hawaii Class under Hawaii law.  This claim is in the public interest because Defendant has, among other things, breached its express warranties as well as made false and misleading representations relating to the qualities and characteristics of the Product.

76.     Plaintiff Howerton and each member of the Hawaii class is a "consumer" as that term is defined in H.R.S. §480-1.

77.     H.R.S. §480-2(a) declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."

78.     The described acts and practices involved "trade and commerce" as that term is used in H.R.S. §480-2(a).

79.     Cargill violated H.R.S. §480-2(a) by the conduct alleged above, including but not limited to, representing that Truvía is a natural sweetener primarily made with stevia, when it is not.  Cargill's conduct of misrepresenting, concealing, suppressing, or otherwise omitting the foregoing created the likelihood of confusion or of misunderstanding.

80.     The conduct described above caused Plaintiff Howerton to suffer injury to her property, including, without limitation, wrongfully induced payment of money.

81.    Cargill's described acts and practices offend established public policy and/or were immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers and were, therefore, unfair in violation of H.R.S. §480-2(a).

82.    Cargill's described acts and practices involved material representations, omissions, or practices that were likely to mislead consumers acting reasonably under the circumstances and were therefore deceptive in violations of H.R.S §480-2(a).

83.    Pursuant to H.R.S. §480-13(b)(1), a consumer who is injured by a violation of this chapter is entitled, for each violation, to be awarded a sum not less than $1,000.00 or threefold any damages he or she sustained, whichever sum is the greater, and reasonable attorneys' fees together with costs of suit.

84.    Pursuant to H.R.S. §480-13(b)(2), a consumer who is injured by a violation of this chapter may bring proceedings to enjoin the unlawful practices and be awarded reasonable attorneys' fees together with costs of suit.

## THIRD CLAIM FOR RELIEF
**(Plaintiff, on Behalf of Herself and the Hawaii Class, Alleges Violations of the Hawaii Uniform Deceptive Trade Practice Act, Haw. Rev. Stat. §§481A-1 *et seq.*)**

85.    Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

31

86.    Plaintiff Howerton brings this claim individually and on behalf of members of the Hawaii Class under Hawaii law.

87.    The acts of Defendant complained of herein constitute unfair methods of competition under Hawaii's Uniform Deceptive Trade Practices Act because Defendant represents that Truvía has characteristics and ingredients that it does not have; represents that Truvía is of a particular standard or quality that it does not have; and advertises Truvía with intent not to sell it as advertised.

88.    As a result of the foregoing alleged actions of Defendant, Defendant has been unjustly enriched and Plaintiff and the Hawaii Class have been injured and damaged. Unless the foregoing alleged actions of Defendant are enjoined, Plaintiff and the Hawaii Class will continue to suffer injury and damage.

## FOURTH CLAIM FOR RELIEF
### (Plaintiff, on Behalf of Herself, the Hawaii Class and Classes in the States with Similar Laws, Allege Breach of Express Warranty)

89.    Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

90.    Plaintiff brings this Count individually under the laws of the state where she purchased Truvía and on behalf of: (a) all other persons who purchased

Truvía in the same State; and (b) all other persons who purchased Truvía in States having similar laws regarding express warranty.

91.     Defendant's representations, as described herein, are affirmations by Defendant that Truvía is a natural sweetener primarily made of stevia. Defendant's representations regarding Truvía are made to Plaintiff and the other members of the Classes at the point of purchase and are part of the description of the goods. Those promises constituted express warranties and became part of the basis of the bargain, between Defendant on the one hand, and Plaintiff and the Classes on the other.

92.     In addition, or in the alternative, Defendant made each of its above-described representations to induce Plaintiff and the Classes to rely on such representations, and they each did so rely on Defendant's representations as a material factor in their decisions to purchase Truvía. Plaintiff and other members of the Classes would not have purchased Truvía but for these representations and warranties.

93.     Truvía did not, in fact, meet the representations Defendant made about Truvía, as described herein.

94.     At all times relevant to this action, Defendant falsely represented that Truvía was a natural sweetener primarily made from the stevia plant, when in fact it is not natural and is not primarily made from the stevia plant.

95.   At all times relevant to this action, Defendant made false representations in breach of the express warranties and in violation of state express warranty laws, including:

a.   Alaska St. §45.02.313;

b.   Ariz. Rev. Stat. Ann. §47-2313;

c.   Ark. Code Ann. §4-2-313;

d.   Cal. Com. Code §2313;

e.   Colo. Rev. Stat. §4-2-313;

f.   Conn. Gen. Stat. Ann. §42a-2-313;

g.   D.C. Code §28:2-313;

h.   Fla. Stat. §672.313;

i.   Haw. Rev. Stat. §490:2-313;

j.   810 Ill. Comp. Stat. 5/2-313;

k.   Ind. Code §26-1-2-313;

l.   Kan. Stat. Ann. §84-2-313;

m.   La. Civ. Code. Ann. art. 2520;

n.   Maine Rev. Stat. Ann. 11 §2-313;

o.   Mass. Gen. Laws Ann. 106 §2-313;

p.   Minn. Stat. Ann. §336.2-313;

q.   Miss. Code Ann. §75-2-313;

r.     Mo. Rev. Stat. §400.2-313;

s.     Mont. Code Ann. §30-2-313;

t.     Neb. Rev. Stat. §2-313;

u.     Nev. Rev. Stat. §104.2313;

v.     N.H. Rev. Stat. Ann. §382-A:2-313;

w.     N.J. Stat. Ann. §12A:2-313;

x.     N.M. Stat. Ann. §55-2-313;

y.     N.Y. U.C.C. Law §2-313;

z.     N.C. Gen. Stat. Ann. §25-2-313;

aa.    Okla. Stat. Ann. tit. 12A, §2-313;

bb.    Or. Rev. Stat. §72.3130;

cc.    Pa. Stat. Ann. tit. 13, §2313;

dd.    R.I. Gen. Laws §6A-2-313;

ee.    S.C. Code Ann. §36-2-313;

ff.    S.D. Codified Laws. §57A-2-313;

gg.    Tenn. Code Ann. §47-2-313;

hh.    Tex. Bus. & Com. Code Ann. §2.313;

ii.    Utah Code Ann. §70A-2-313;

jj.    Vt. Stat. Ann. tit. 9A§2-313;

kk.    Wash. Rev. Code §62A.2-313;

ll.    W. Va. Code §46-2-313;

mm.    Wyo. Stat. Ann. §34.1-2-313;

96.    The above statutes do not require privity of contract in order to recover for breach of express warranty.

97.    As a proximate result of this breach of warranty by Defendant, Plaintiff and other members of the Classes have been damaged in an amount to be determined at trial because: (a) they paid a price premium due to the deceptive labeling of Truvía; and (b) Truvía did not have the composition, attributes, characteristics, nutritional value, health qualities, or value promised.

98.    Wherefore, Plaintiff and the Classes demand judgment against Defendant for compensatory damages, plus interest, costs, and such additional relief as the Court may deem appropriate or to which Plaintiff and the Classes may be entitled.

## FIFTH CLAIM FOR RELIEF
**(Plaintiff, on Behalf of Herself, the Hawaii Class, and Classes in the States with Similar Laws, Allege Breach of Implied Warranty)**

99.    Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

100.    Plaintiff brings this Count individually under the laws of the state where she purchased Truvía and on behalf of: (a) all other persons who purchased

36

Truvía in the same State; and (b) all other persons who purchased Truvía in States having similar laws regarding implied warranties.

101.  The Uniform Commercial Code §2-314 provides that unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. This implied warranty of merchantability acts as a guarantee by the seller that his goods are fit for the ordinary purposes for which they are to be used.

102.  Defendant developed, manufactured, advertised, marketed, sold, and/or distributed the Product and represented that the Product was fit for a particular use, specifically that the Product could be used as a natural sweetener primarily made from the stevia plant.  Contrary to such representations, Defendant failed to disclose that the Product is not natural and is not primarily made from the stevia plant, as promised.

103.  At all times, the following states listed below, including the District of Columbia, have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability:

a.  Ala. Code §7-2-314;

b.  Alaska Stat. §45.02.314;

c.  Ariz. Rev. Stat. Ann. §47-2314;

d.  Ark. Code Ann. §4-2-314;

e.     Cal. Com. Code §2314;

f.     Colo. Rev. Stat. §4-2-314;

g.     Conn. Gen. Stat. Ann. §42a-2-314;

h.     Del. Code Ann. tit. 6 §2-314;

i.     D.C. Code §28:2-314;

j.     Fla. Stat. §672.314;

k.     Ga. Code Ann. §11-2-314;

l.     Haw. Rev. Stat. §490:2-314;

m.     Idaho Code §28-2-314;

n.     810 Ill. Comp. Stat. Ann. 5/2-314;

o.     Ind. Code Ann. §26-1-2-314;

p.     Iowa Code Ann. §554.2314;

q.     Kan. Stat. Ann. §84-2-314;

r.     Ky. Rev. Stat. Ann. §355.2-314;

s.     La. Civ. Code Ann. art. §2520;

t.     Me. Rev. Stat. Ann. 11 §2-314;

u.     Md. Code Ann. Com. Law §2-314;

v.     Mass. Gen. Laws Ch. 106 §2-314;

w.     Mich. Comp. Laws Ann. §440.2314;

x.     Minn. Stat. Ann. §336.2-314;

y.     Miss. Code Ann. §75-2-314;

z.     Mo. Rev. Stat. §400.2-314;

aa.     Mont. Code Ann. §30-2-314;

bb.     Nev. Rev. Stat. §104.2314;

cc.     N.H. Rev. Stat. Ann. §382-A:2-314;

dd.     N.J. Stat. Ann. §12A:2-314;

ee.     N.M. Stat. Ann. §55-2-314;

ff.     N.Y. U.C.C. Law §2-314;

gg.     N.C. Gen. Stat. Ann. §25-2-314;

hh.     N.D. Cent. Code §41-02-314;

ii.     Ohio Rev. Code Ann. §1302.27;

jj.     Okla. Stat. Ann. tit. 12A §2-314;

kk.     Or. Rev. Stat. §72.3140;

ll.     Pa. Stat. Ann. tit. 13 §2314;

mm.     R.I. Gen. Laws §6A-2-314;

nn.     S.C. Code Ann. §36-2-314;

oo.     S.D. Codified Laws §57A-2-314;

pp.     Tenn. Code Ann. §47-2-314;

qq.     Tex. Bus. & Com. Code Ann. §2-314;

rr.     Utah Code Ann. §70A-2-314;

ss.   Va. Code Ann. §8.2-314;

tt.   Vt. Stat. Ann. tit. 9A §2-314;

uu.   W. Va. Code §46-2-314;

vv.   Wash. Rev. Code §62A 2-314;

ww.   Wis. Stat. Ann. §402.314; and

xx.   Wyo. Stat. Ann. §34.1-2-314.

104.   As developer, manufacturer, producer, advertiser, marketer, seller and/or distributor of sweetening products, Defendant is a "merchant" within the meaning of the various states' commercial codes governing the implied warranty of merchantability.

105.   Further, Defendant is a merchant with respect to the Product. Defendant developed, manufactured, produced, advertised, marketed, sold, and/or distributed the Product and represented to Plaintiff and the Classes that it developed the Product as a natural sweetener primarily made from the stevia plant as described herein.   Further, Defendant, by selling the Product to Plaintiff and the Classes has held itself out as a retailer of the Product that could be used as a natural sweetener primarily made from the stevia plant and, in fact, has derived a substantial amount of revenues from the sale of the Product.

106.   The Product can be classified as "goods," as defined in the various states' commercial codes governing the implied warranty of merchantability.

107.   As a merchant of the Product, Defendant knew that purchasers relied upon them to develop, manufacture, produce, sell, and distribute a product that could be used as a natural sweetener primarily made from the stevia plant, as promised.

108.   Defendant developed, manufactured, produced, sold, and distributed the Product to consumers such as Plaintiff and the Classes.   It knew that the Product would be used as a natural sweetener primarily made from the stevia plant, as promised.

109.   Defendant specifically represented in its labeling of the Product that it is a natural sweetener primarily made from the stevia plant, as described herein.

110.   At the time that Defendant developed, manufactured, sold, and/or distributed the Product, Defendant knew the purpose for which the Product was intended and impliedly warranted that the Product was of merchantable quality and was fit for its ordinary purpose – a natural sweetener primarily made from the stevia plant.

111.   Defendant breached its implied warranties in connection with the sale of the Product to Plaintiff and members of the Classes.   The Product was not fit for its ordinary purposes and intended use as a natural sweetener primarily made of stevia, because the Product is not natural and is predominantly made of erythritol.

112.   Defendant had actual knowledge that the Product was not natural and was not primarily made from the stevia plant as promised and thus was not fit for its ordinary purpose and Plaintiff therefore was not required to notify Defendant of its breach.  If notice is required, Plaintiff and the Classes adequately have provided Defendant of such notice through the filing of this lawsuit.

113.   As a direct and proximate result of Defendant's breach of implied warranties, Plaintiff and other members of the Classes have been injured.  Plaintiff and the other members of the Classes would not have purchased the Product but for Defendant's representations and warranties.   Defendant misrepresented the character of the Product, which caused injuries to Plaintiff and the other members of the Classes because either they paid a price premium due to the deceptive labeling or they purchased products that were not of a character and fitness as promised and therefore had no value to Plaintiff and the other members of the Classes.

## SIXTH CLAIM FOR RELIEF
### (Plaintiff, on Behalf of Herself and Classes in the States with Similar Laws, Allege Violation of the Consumer Fraud Laws of the Various States)

114.   Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

115.  Plaintiff brings this Count individually under the laws of the state where she purchased Truvía and on behalf of all other persons who purchased Truvía in States having similar laws regarding consumer fraud and deceptive trade practices.

116.  Plaintiff and each of the other members of the Classes are consumers, purchasers, or other persons entitled to the protection of the consumer protection laws of the State in which they purchased the Product.

117.  The consumer protection laws of the State in which Plaintiff and the other members of the Classes purchased the Product declare that unfair or deceptive acts or practices, in the conduct of trade or commerce, are unlawful.

118.  Forty States and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

a.  Alabama Deceptive Trade Practices Act, Ala. Code §8-19-1 *et seq.*;

b.  Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Code §45.50.471 *et seq.*;

c.  Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101 *et seq.*;

d.  California Consumer Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.*;

e.   Colorado Consumer Protection Act, Colo. Rev. Stat. §6-1-101 *et seq.*;

f.   Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110a *et seq.*;

g.   Delaware Deceptive Trade Practices Act, Del. Code tit. 6§2511 *et seq.*;

h.   District of Columbia Consumer Protection Procedures Act, D.C. Code §28 3901 *et seq.*;

i.   Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §501.201 *et seq.*;

j.   Georgia Fair Business Practices Act, Ga. Code Ann. §10-1-390 *et seq.*;

k.   Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues §480-1 *et seq.*, and Hawaii Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. §481A-1 *et seq.*;

l.   Idaho Consumer Protection Act, Idaho Code Ann. §48-601 *et seq.*;

m.   Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1 *et seq.*;

n.   Kansas Consumer Protection Act, Kan. Stat. Ann §50 626 *et seq.*;

o.   Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §367.110 *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §365.020 *et seq.*;

p.   Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §51:1401 *et seq.*;

q.   Maine Unfair Trade Practices Act, Me. Rev. Stat. tit. 5 §205A *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. tit. 10, §1211 *et seq.*,

r.   Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

s.   Michigan Consumer Protection Act, Mich. Comp. Laws §445.901 *et seq.*;

t.   Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann.§325F.68 *et seq.,* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.43 *et seq.*;

u.   Mississippi Consumer Protection Act, Miss. Code Ann. §§75-24-1 *et seq.*;

v.   Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010 *et seq.*;

w.   Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. §30-14-101 *et seq.*;

x.   Nebraska Consumer Protection Act, Neb. Rev. Stat. §59-1601 *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301 *et seq.*;

y.   Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §598.0903 *et seq.*;

z.   New Hampshire Consumer Protection Act,  N.H. Rev. Stat. §358-A:1 *et seq.*;

aa.   New Jersey Consumer Fraud Act, N.J. Stat. Ann. §56:8 1 *et seq.*;

bb.   New Mexico Unfair Practices Act, N.M. Stat. Ann. §57 12 1 *et seq.*;

cc.   New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §349 *et seq.*;

dd.   North Dakota Consumer Fraud Act, N.D. Cent. Code §51 15 01 *et seq.*;

ee.   Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §1345.02 and 1345.03; Ohio Admin. Code §109:4-3-02, 109:4-3-03, and 109:4-3-10;

ff.   Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 §751 *et seq.*;

gg.   Oregon Unfair Trade Practices Act, Ore. Rev. Stat §646.608(e) & (g);

hh.   Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws §6-13.1-1 *et seq.*;

ii.   South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10 *et seq.*;

jj.   South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§37 24 1 *et seq.*;

kk.   Tennessee Consumer Protection Act, Tenn. Code Ann. §47-18-101 *et seq.*;

ll.   Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §2451 *et seq.*;

mm.   Washington Consumer Fraud Act, Wash. Rev. Code §19.86.010 *et seq.*;

nn.   West Virginia Consumer Credit and Protection Act, West Virginia Code §46A-6-101 *et seq.*; and

oo.   Wisconsin Deceptive Trade Practices Act, Wis. Stat. §100.18 *et seq.*

119.   The Product constitutes a product to which these consumer protection laws apply.

120.   In the conduct of trade or commerce regarding its production, marketing, and sale of the Product, Defendant engaged in one or more unfair or deceptive acts or practices, including, but not limited to, uniformly representing to Plaintiff and each member of the Classes by means of its packaging and labeling of the Product that it is a natural sweetener primarily made from the stevia plant, as described herein.

121.   Defendant's representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

122.   Defendant knew, or should have known, that its representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

123.   Defendant used or employed such deceptive and unlawful acts or practices with the intent that Plaintiff and members of the Classes rely thereon.

124.   Plaintiff and the other members of the Classes did so rely.

125.   Plaintiff and the other members of the Classes purchased the Product produced by Defendant which misrepresented the characteristics and nature of the Product.

126.   Plaintiff and the other members of the Classes would not have purchased the Product but for Defendant's deceptive and unlawful acts.

127.   As a result of Defendant's conduct, Plaintiff and the other members of the Classes sustained damages in amounts to be proven at trial.

128.   Defendant's conduct showed complete indifference to, or conscious disregard for, the rights and safety of others such that an award of punitive and/or statutory damages is appropriate under the consumer protection laws of those states that permit such damages to be sought and recovered.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief against Defendant as follows:

A.      that the Court certify the nationwide Class and the Hawaii Class under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiff as Class Representative and her attorneys as Class Counsel to represent the members of the Classes;

B.      that the Court declare that Defendant's conduct violates the statutes referenced herein;

C.      that the Court preliminarily and permanently enjoin Defendant from conducting its business through the unlawful, unfair, or fraudulent business acts or practices, untrue, and misleading labeling and marketing and other violations of law described in this Complaint;

D.      that the Court order Defendant to conduct a corrective advertising and information campaign advising consumers that the Product does not have the characteristics, uses, benefits, and quality Defendant has claimed;

E.      that the Court order Defendant to implement whatever measures are necessary to remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

F.      that the Court order Defendant to notify each and every individual and/or business who purchased the Product of the pendency of the claims in this

action in order to give such individuals and businesses an opportunity to obtain restitution from Defendant;

G.    that the Court order Defendant to pay restitution to restore to all affected persons all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or a fraudulent business act or practice, untrue or misleading labeling, advertising, and marketing, plus pre- and post-judgment interest thereon;

H.    that the Court order Defendant to disgorge all monies wrongfully obtained and all revenues and profits derived by Defendant as a result of its acts or practices as alleged in this Complaint;

I.    that the Court award damages to Plaintiff and the Classes;

J.    the common fund doctrine, and/or any other appropriate legal theory; and

K.    that the Court grant such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

DATED: July 3, 2013

LAWRENCE W. COHN

Lawrence W. Cohn

Lawrence W. Cohn

49

Attorney at Law
75-109 Lolo Lane
Kailua Kona, HI 96740
Telephone:  (808) 324-1611
Facsimile:  (808) 322-6168
elcohnhead@hawaii.rr.com


Christopher M. Burke
SCOTT+SCOTT, ATTORNEYS AT
LAW, LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
cburke@scott-scott.com


Joseph P. Guglielmo
SCOTT+SCOTT, ATTORNEYS AT
LAW, LLP
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com


Jared H. Beck
BECK & LEE TRIAL LAWYERS
66 West Flagler Street, Suite 1000
Miami, Florida 33130
Telephone: (305) 789-0072
Facsimile: (786) 664-3334
jared@beckandlee.com

E. Kirk Wood
WOOD LAW FIRM, LLC
P. O. Box 382434
Birmingham, Alabama 35238-2434
Telephone:  (205) 908-4906
Facsimile:  (866) 747-3905
ekirkwood1@bellsouth.net

Greg L. Davis
DAVIS & TALIAFERRO
7031 Halcyon Park Drive
Montgomery, AL 36117
Telephone: 334-832-9080
Facsimile: 334-409-7001
gldavis@knology.net

*Counsel for Plaintiff*