Joseph P. Guglielmo (*pro hac vice*)
Erin Green Comite (*pro hac vice*)
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com

*Counsel for Plaintiffs Howerton, Calderon and Pasarell and the Proposed Class*

[Additional Counsel in Signature Block]

Clayton D. Halunen (*pro hac vice*)
Melissa Wolchansky (*pro hac vice*)
HALUNEN & ASSOCIATES
1650 IDS Center, 80 S. 8th Street
Minneapolis, Minnesota  55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
halunen@halunenlaw.com
wolchansky@halunenlaw.com

Michael R. Reese (*pro hac vice*)
Kim E. Richman (*pro hac vice*)
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York  10001
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272
mreese@reeserichman.com
krichman@reeserichman.com

*Counsel for Plaintiffs Martin and Barry and the Proposed Class*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DENISE HOWERTON, ERIN CALDERON, and RUTH PASARELL, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiffs,<br><br>  vs.<br><br>CARGILL, INC.,<br><br>             Defendant. | Civil No. 13-00336 LEK-BMK<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

[CAPTION CONTINUED ON NEXT PAGE]

MOLLY MARTIN and LAUREN BARRY, on behalf of themselves and others similarly situated,

         Plaintiffs,

  vs.

CARGILL, INC.,

         Defendant.

Civil No. 14-cv-00218-LEK-BMK

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ...................................................................1

II.   FACTUAL AND PROCEDURAL HISTORY ........................................3

    A.    Summary of Plaintiffs' Claims................................................3

    B.    Procedural History....................................................................5

    C.    Plaintiffs' Pre-Complaint Due Diligence ...........................10

    D.    Plaintiffs Martin and Barry's Initial Settlement Negotiations ............10

    E.    Plaintiffs' Counsel Work Together to Reach the
        Proposed Settlement...............................................................11

III.  THE TERMS OF THE PROPOSED SETTLEMENT....................................12

    A.    Cargill Must Pay a Substantial Sum into a Fund to Compensate
        Those Harmed by Its Allegedly Deceptive Labeling..........................13

    B.    Cargill Must Change Its Business Practices So As To Be
        Truthful in Labeling the Truvia Consumer Products ........................14

    C.    Cargill Agrees to Class Certification for Settlement
        Purposes Only..........................................................................16

    D.    Cargill Will Pay Plaintiffs' Incentive Awards and
        Court-Awarded Attorneys' Fees and Litigation Costs.......................17

IV.   THE COURT SHOULD PRELIMINARY APPROVE
     THE SETTLEMENT................................................................................17

    A.    Legal Standard.........................................................................18

    B.    The Factors Weigh in Favor of Granting Preliminary Approval........20

        1.    The Settlement Is the Result of Arm's-Length Negotiations......20

        2.    The Strength of Plaintiffs' Case and Risk, Expense,
            Complexity, and Likely Duration of Further Litigation..............22

        3.    The Risk of Maintaining Class Action Status through Trial.......24

        4.    The Amount Offered in Settlement .........................................25

        5.    The Stage of the Proceedings ...................................................27

        6.    The Experience and Views of Counsel ....................................28

        7.    The Presence of a Governmental Participant ...........................29

8.    The Reaction of the Class Members to the Settlement ...............29

V.    THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT CLASS ...................................................................30

    A.    The Proposed Settlement Class ...........................................30

    B.    Legal Standard....................................................................31

    C.    The Settlement Class Satisfies the Requirements of Rule 23(a).........32

        1.    The Class Is Sufficiently Numerous.............................32

        2.    Common Questions of Law and Fact Exist...................32

        3.    Plaintiffs' Claims Are Typical of Those of the Class ................34

        4.    Adequate Representation Is Satisfied.........................35

    D.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ...................................................................36

        1.    Common Legal and Factual Questions Predominate .................37

        2.    A Class Action Is the Superior Means to Adjudicate the Claims ...................................................................38

    E.    The Court Should Appoint Class Counsel for the Settlement Class ...................................................................39

VI.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ...................................................................40

    A.    The Notice Plan....................................................................40

    B.    The Proposed Method of Notice is Appropriate .................41

    C.    The Proposed Content of Notice Is Adequate....................42

VII.    PROPOSED SCHEDULE OF EVENTS ......................................43

VIII.    CONCLUSION............................................................................45

<u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Abdullah v. U.S. Sec. Assoc., Inc.*,
   731 F.3d 952 (9th Cir. 2013) .............................................................................33

*Almodova v. City & Cnty. of Honolulu*,
   Civil No. 07-00378DAE-LEK, 2010 WL 1372298
   (D. Haw. Mar. 31, 2010) *report and recommendation adopted*,
   CIV.0700378-DAE-LEK, 2010 WL 1644971 (D. Haw. Apr. 20, 2010).....24, 28

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................31, 37

*Arnold v. Fitflop USA, LLC*,
   11-CV-0973 W (KSC), 2014 WL 1670133 (S.D. Cal. Apr. 28, 2014)..............42

*Baker v. Castle & Cooke Homes Hawaii, Inc.*,
   Civil No. 11-00616 SOM-RLP, 2014 WL 1669131
   (D. Haw. Jan. 31, 2014) ......................................................................................32

*Barbosa v. Cargill Meat Solutions Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ......................................................................27

*Beck-Ellman v. Kaz USA, Inc.*,
   3:10-CV-02134-H-DHB, 2013 WL 1748729 (S.D. Cal. Jan. 7, 2013)..............42

*Cabbat v. Philip Morris USA, Inc.*,
   Civil No. 10-00162  DKW/BMK, 2014 WL 32172
   (D. Haw. Jan. 6, 2014) ......................................................................................36

*Californians for Disability Rights, Inc. v. California Dep't of Transp.*,
   249 F.R.D. 334 (N.D. Cal. 2008)........................................................................35

*Churchill Vill., LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ............................................................................19

*Davis v. Four Seasons Hotel Ltd.*,
   277 F.R.D. 429 (D. Haw. 2011) ........................................................................37

*Donkerbrook v. Title Guar. Escrow Serv., Inc.*,
   Civil No. 10-00616 LEK-RLP, 2011 WL 1587521
   (D. Haw. Apr. 25, 2011) ....................................................................31

*Dukes v. Walmart, Inc.*,
   509 F.3d 1168 (9th Cir. 2007) ...........................................................34

*Forcellati v. Hyland's, Inc.*,
   CV 12-1983-GHK(MRWx), 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) .......33

*Halbach v. Great-W. Life & Annuity Ins. Co.*,
   No. 4:05CV02399 ERW, 2007 WL 1018658 (E.D. Mo. Apr. 2, 2007).............36

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ....................................................37, 39

*In re Lupron Mktg. and Sales Practices Litig.*,
   345 F. Supp. 2d 135 (D. Mass. 2004)..................................................30

*In re Pac. Enter. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) .............................................................28

*In re Rubber Chemicals Antitrust Litig.*,
   232 F.R.D. 346 (N.D. Cal. 2005).......................................................39

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007)...............................................20

*In re Truvia Natural Sweetener Mktg. and Sales Practices Litig.*,
   MDL No. 2512, 2014 WL 585552 (J.P.M.L. Feb. 12, 2014)...........................9

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
   MDL Docket No. C-07-1841(EMC), 2011 WL 3352460
   (N.D. Cal. Aug. 2, 2011)..................................................................43

*Int. Longshore & Warehouse Union, Local 142 v. C. Brewer and Co., Ltd.*,
   Civil No. 06-00260-SOM-LEK, 2007 WL 4145228
   (D. Haw. Nov. 20, 2007) ...........................................................*passim*

*Kyne v. Ritz-Carlton Hotel, L.L.C.*,
   Civil No. 08-00530 ACK-RLP, 2011WL 2938502 (D. Haw. June 27,
   2011) .......................................................................................36

*Leyva v. Medline Indus. Inc.*,
    716 F.3d 510 (9th Cir. 2013) ..............................................................31

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ....................................................18, 27

*Lundell v. Dell, Inc.*,
    No. C05-3970 JWRS, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ...............18

*Martin v. Cargill*, Inc.,
    295 F.R.D. 380 (D. Minn. 2013) ..........................................................8

*Misra* v. *Decision One Mortg. Co.*,
    07-cv-0994 DOC, 2009 WL 4581276 (C.D. Cal. Apr. 13, 2009) ...............22, 27

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ....................................................24, 28

*Nigh v. Humphreys Pharmacal, Inc.*,
    No. 12cv2714-MMA-DHB, 2013 WL 5995382
    (S.D. Cal. Oct. 23, 2013) ...................................................*passim*

*Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ....................................................20, 25

*Rodriguez v. D.M. Camp & Sons*,
    1:09-CV-00700-AWI, 2012 WL 6115651 (E.D. Cal. Dec. 7, 2012) ...............29

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .............................................21, 42, 43

*Simpson v. Fireman's Fund Ins. Co.*,
    231 F.R.D. 391 (N.D. Cal. 2005)..........................................................34

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ..............................................................35

*Wadsworth v. KSL Grand Wailea Resort, Inc.*,
    Civil No. 08-00527 ACK-RLP, 2011 WL 2938469
    (D. Haw. June 27, 2011) ..................................................................36

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011).....................................................................32

v

*Weeks v. Kellogg Co.*,
    CV 09-08102 (MMM)(RZX), 2013 WL 6531177
    (C.D. Cal. Nov. 23, 2013) ........................................................................34, 38, 39

*West v. Circle K Stores, Inc.*,
    No. Civ. S-04-0438 WBS GGH, 2006 WL 1652598
    (E.D. Cal. June 13, 2006) .......................................................................19, 20, 30

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ............................................................................38

## STATUTES, RULES & REGULATIONS

United States Code
    28 U.S.C. § 1404 ....................................................................................................9
    28 U.S.C. § 1407 ....................................................................................................9
    28 U.S.C. § 1715 ..................................................................................................29

Federal Rules of Civil Procedure
    Rule 23 ....................................................................................................30, 31, 42
    Rule 23(a) ......................................................................................16, 31, 32, 39
    Rule 23(a)(2) ....................................................................................................32, 33
    Rule 23(a)(3) ..........................................................................................................34
    Rule 23(a)(4) ..................................................................................................35, 39
    Rule 23(b) ..............................................................................................................31
    Rule 23(b)(3) .................................................................................................*passim*
    Rule 23(c) ................................................................................................................3
    Rule 23(c)(2)(B) ..............................................................................................40, 42
    Rule 23(e) ......................................................................................1, 3, 40, 44
    Rule 23(e)(1) ........................................................................................................40
    Rule 23(e)(1)(C) ..................................................................................................45
    Rule 23(e)(2) ........................................................................................................19
    Rule 23(g) ................................................................................................................3
    Rule 23(g)(1) ........................................................................................................39

Cal. Civ. Code § 1750 ..................................................................................................6

Plaintiffs Denise Howerton, Erin Calderon, Ruth Pasarell, Molly Martin, and Lauren Barry ("Plaintiffs") respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Preliminary Approval of Class Action Settlement.  Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs seek the entry of an Order:  (i) granting preliminary approval of the proposed Settlement Agreement filed concurrently herewith as Exhibit 1 to the Declaration of Joseph P. Guglielmo ("Guglielmo Decl."); (ii) conditionally certifying the Settlement Class for purposes of such settlement and appointing Plaintiffs as representatives for the Settlement Class; (iii) approving Plaintiffs' selection of Class Counsel; (iv) approving the proposed notice plan; and (v) setting a hearing date for final approval of the Settlement.

## I.     PRELIMINARY STATEMENT

Plaintiffs allege that Cargill, Incorporated ("Cargill" or "Defendant") deceptively and misleadingly marketed and labeled its Truvia® Natural Sweetener products, including Truvia® Natural Sweetener in packet form ("Truvia® packets"), Truvia® Natural Sweetener in spoonable form, ("Truvia® spoonable") and Truvia® Natural Sweetener Baking Blend, a combination of Truvia® Natural Sweetener and sugar ("Truvia® Baking Blend") (collectively, the "Truvia

Consumer Products").[1]  *See generally Howerton* Consolidated Amended Class Action Complaint ("Howerton Compl.") (ECF No. 80); *Martin* Class Action Complaint ("Martin Compl."), *Martin*, 14-cv-00218-LEK-BMK, ECF No. 1.

Plaintiffs' objective in filing the lawsuits was to remedy the alleged deception in Cargill's marketing and labeling of the Truvia Consumer Products. The Parties have reached a proposed Settlement of the various nationwide class actions (the "Settlement") that achieves this goal.  The Settlement requires Cargill to make substantive changes to the Truvia Consumer Product packaging and amendments to the Truvia.com website that resolve the allegations challenging the labeling, packaging, advertising, and marketing of the Truvia Consumer Products. Additionally, the Settlement allows eligible Settlement Class Members to make a claim – depending on the amount of their purchases during the Class Period – to recover either cash reimbursement (minimum - $7.50, maximum - $45.00) or Eligible Product Vouchers (minimum value - $18.00, maximum value - $90.00).

The Parties only reached this Settlement after conducting significant settlement-related discovery and engaging in extensive arm's-length negotiations, including three mediation sessions with the Honorable James M. Rosenbaum (Ret.) (involving Cargill and Plaintiffs Martin and Barry) and multiple in-person

---

[1]    All capitalized terms referenced in this Memorandum have the same meaning as in the Settlement Agreement.  (Guglielmo Decl., Ex. 1.)

settlement conferences with all Plaintiffs, amounting to almost one year of settlement negotiations.  This Settlement is an excellent result because it provides the Settlement Class with meaningful monetary and injunctive relief, while taking into account the substantial risks the Parties would face if the litigation progressed. Accordingly, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement so that notice can be provided to the members of the Settlement Class and a Fairness Hearing can be scheduled to consider final approval of the Settlement.  *See* Fed. R. Civ. P. 23(e).

Plaintiffs also respectfully request that they be appointed as representatives for the Settlement Class and that their counsel be appointed as Class Counsel.  *See* Fed. R. Civ. P. 23(g).  The Court also should approve the robust notice program agreed to in the Settlement as it meets the requirements of due process and is the best notice practicable under the circumstances.  *See* Fed. R. Civ. P. 23(c).

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Summary of Plaintiffs' Claims

This case arises out of alleged deceptive and misleading marketing and of the Truvia Consumer Products. (Howerton Compl., ¶1; Martin Compl., ¶1). Cargill labels, advertises, and otherwise markets the Truvia Consumer Products, and their ingredients, as natural sweeteners.  (Howerton Compl., ¶¶5-6, 16-20; Martin Compl.,  ¶¶23-31).  Cargill makes the following statements on the

3

packaging for the Truvia Consumer Products:

- Truvía® sweetener comes from nature

- Stevia leaf extract is born from the sweet leaf of the stevia plant, native to South America. Dried stevia leaves are steeped in water, similar to making tea.

- Erythritol is a natural sweetener, produced by a natural process, and is also found in fruits like grapes and pears.

- One packet of Truvía® natural sweetener provides the same sweetness as two teaspoons of sugar.

(Howerton Compl., ¶18; Martin Compl., , ¶¶ 24, 25).

Plaintiffs claim the labeling of the Truvia Consumer Products as natural sweeteners is deceptive, misleading, and false, and allege specifically that two of the ingredients, stevia leaf extract and erythritol, are not natural due to the manner in which they are processed.  (Howerton Compl., ¶¶19-20; Martin Compl., ¶40). The "natural" labeling, read in conjunction with the statements quoted above, creates consumer confusion regarding the processing of the Truvia Consumer Products' ingredients. Cargill's "natural" description on the labeling implies to reasonable consumers that stevia leaf extract is unprocessed and that the erythritol is harvested directly from fruits.  (Howerton Compl., ¶¶19-20; Martin Compl., ¶¶58-64).  Over two hundred times sweeter than sugar, stevia leaf extract is purported to be the principal ingredient in the Truvia Consumer Products; yet only a miniscule amount of stevia leaf extract actually is present in the Truvia

Consumer Products.  (Howerton Compl., ¶¶21-22; Martin Compl., ¶41).  Although stevia leaf extract is a component of the stevia leaf, Plaintiffs allege that the extraction process precludes it from being considered a natural ingredient. (Howerton Compl., ¶¶23-31; Martin Compl.,  ¶¶46-49).  The primary ingredient in the Truvia Consumer Products, erythritol, is a sugar alcohol used as a bulking agent in the Truvia Consumer Products.  (Howerton Compl., ¶21; Martin Compl., ¶50).  Plaintiffs allege the erythritol cannot be considered natural – and the descriptions of erythritol on the labels are misleading – because it is produced through a fermentation process and because it uses dextrose that is derived from genetically modified corn.  (Howerton Compl., ¶¶33-37; Martin Compl.,  ¶¶52-53). Plaintiffs allege that the descriptions of these ingredients, as listed above, render the advertisements and "natural" claims false and misleading.  (Howerton Compl., ¶¶29-31, 34-37;  Martin Compl., ¶¶54-55).   By this conduct, Plaintiffs allege consumers were injured and Cargill was unjustly enriched, breached warranties to consumers and violated consumer protection statutes in Hawaii, California, Florida and Minnesota.  (Howerton Compl., ¶¶69-168; Martin Compl.,  ¶¶73-150).

## B.     Procedural History

On February 12, 2013, counsel for Plaintiff Martin served a complaint on Cargill styled *Martin v. Cargill, Inc.* in the Hennepin County, Minnesota, District Court, challenging the labeling of Cargill's Truvia Consumer Products.

(Declaration of Clayton D. Halunen ("Halunen Decl."), ¶4; Ex. A).  On February 28, 2013, Plaintiff Martin voluntarily dismissed the action without prejudice to facilitate mediation of the dispute.  (Halunen Decl., ¶5; Ex. B).

On March 1, 2013, counsel for Plaintiff Barry sent a letter and draft complaint to Cargill alleging that Cargill was in violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §1750 *et seq.* (the "CLRA") in its labeling and marketing of the Truvia Consumer Products as "natural" and in its description of the stevia leaf extract and erythritol ingredients.  (Halunen Decl., ¶6; Ex. C).  In her draft proposed complaint, Plaintiff Barry sought damages and injunctive relief and proposed to represent herself and California and nationwide classes of Truvia Consumer Product purchasers.  (*Id.*, Ex. C).

On June 13, 2013, counsel for Martin and Barry and Cargill participated in a two-day mediation conducted with the highly capable assistance of Hon. James M. Rosenbaum (Ret.) of JAMS, in Minneapolis, Minnesota.  (*Id.*, ¶14).  After lengthy negotiations, the mediation session ended with no final agreement.  (*Id.*, ¶15).  Following the first mediation session, the Parties had numerous in-person meetings and teleconferences to continue efforts at resolution, including working through what at times appeared to be impasses.  (*Id.*).

On July 8, 2013, Plaintiff Howerton, through her counsel, who were unaware of any settlement efforts on behalf of Plaintiffs Martin and Barry, filed the

*Howerton* action.   (Guglielmo Decl., ¶¶5, 8; Halunen Decl., ¶16).   In the meantime, settlement negotiations between Plaintiffs Martin and Barry and Cargill continued for several weeks, and, on July 30, 2013, they entered into a second mediation session with the assistance of Judge Rosenbaum in Minneapolis, Minnesota.   (Halunen Decl., ¶17).   Plaintiffs Martin and Barry and Cargill concluded the second mediation session with a tentative agreement to attend a third mediation session if they could agree on the general terms of a settlement.  (*Id.*). On August 2, 2013, Plaintiffs Martin and Barry and Cargill entered into a third mediation session with Judge Rosenbaum, which resulted in a settlement of $5.3 million nationwide class action settlement (the "Martin Settlement").  (*Id.*, ¶18).

On September 18, 2013, Plaintiffs Martin and Barry filed a federal action in the District of Minnesota along with a motion for preliminary approval of the Martin Settlement.  *Martin v. Cargill, Inc.*, 13-CV-02563 ("Minnesota Action"). (Guglielmo Decl., ¶6; Halunen Decl., ¶19).   Simultaneously, Cargill filed a motion for nationwide stay and preliminary injunction.  (*Id.*).   In this Court, on September 20, 2013, Cargill moved to stay this action (ECF No. 31), while Plaintiff Howerton submitted an *ex parte* application seeking expedited discovery relating to the Martin Settlement.   ECF No. 35.   (Guglielmo Decl., ¶7; Halunen Decl., ¶20). Following oral argument, on October 11, 2013, Magistrate Judge Kurren denied Defendant's motion to stay and Plaintiff Howerton's motion for discovery in

deference to resolution of the issues by the Minnesota Court. ECF No. 48. (Guglielmo Decl., ¶7; Halunen Decl., ¶23).

On October 23, 2013, Judge Richard H. Kyle of the District of Minnesota held a hearing on Plaintiffs Martin and Barry's motion for preliminary approval of the Martin Settlement. (Guglielmo Decl., ¶10; Halunen Decl., ¶24). Plaintiff Howerton objected to preliminary approval of the Martin Settlement. (Guglielmo Decl., ¶9; Halunen Decl., ¶24). On October 29, 2013, Judge Kyle denied the motion for preliminary approval without prejudice, stating that he did not have enough information to assess the settlement. *See Martin v. Cargill*, Inc., 295 F.R.D. 380, 389 (D. Minn. 2013); (Guglielmo Decl., ¶10; Halunen Decl., ¶25). Instead of asking for more information to assess the settlement at that juncture, however, and concerned with the potential for duplicative class-action litigation, Judge Kyle issued an order to show cause as to whether the first-filed rule should be applied to transfer the Minnesota Action to Hawaii. *Martin*, 295 F.R.D. at 388-89; (Guglielmo Decl., ¶10; Halunen Decl., ¶25). The matter was briefed by Plaintiffs Martin and Barry and Plaintiff Howerton. (*Id*.).

Meanwhile, on September 23, 2013, Plaintiff Calderon filed a complaint in the Central District of California. *Calderon v. Cargill, Inc*. 13-CV-7046 ("California Action"). (Guglielmo Decl., ¶11). On September 24, 2013, Plaintiff Pasarell filed a complaint in the Southern District of Florida. *Pasarell v. Cargill*,

8

*Inc.* 13-CV-23433 ("Florida Action").  (*Id.*).

On November 8, 2013, Plaintiff Pasarell filed a motion in the Florida Action to transfer that action to Hawaii.  (Guglielmo Decl., ¶12; Halunen Decl., ¶26).  On November 11, 2013, Plaintiff Calderon filed a motion in the California Action to transfer that action to Hawaii, which was granted on December 10, 2013. (Guglielmo Decl., ¶12; Halunen Decl., ¶27).  On November 12, 2013, Cargill moved to transfer the Howerton Action pursuant to 28 U.S.C. §1404 to Minnesota. ECF No. 50; (Guglielmo Decl., ¶12).  Cargill also moved for consolidated pretrial proceedings in the District of Minnesota pursuant to 28 U.S.C. §1407 before the Judicial Panel on Multidistrict Litigation ("Panel"), a motion the Panel denied on February 12, 2014.  *In re Truvia Natural Sweetener Mktg. and Sales Practices Litig.*, MDL No. 2512, 2014 WL 585552 (J.P.M.L. Feb. 12, 2014).  (Guglielmo Decl., ¶12; Halunen Decl., ¶28).  On April 28, 2014, Plaintiff Pasarell voluntarily dismissed the Florida Action.  (Guglielmo Decl., ¶12; Halunen Decl., ¶29).  On May 2, 2014, Judge Kyle *sua sponte* transferred *Martin* to Hawaii.  (Guglielmo Decl., 12; Halunen Decl., ¶30).  On May 12, 2014, Plaintiffs Howerton, Calderon, and Pasarell filed a consolidated amended complaint in the instant action.  ECF No. 80; (Guglielmo Decl., 12; Halunen Decl., ¶31).  On May 19, 2014, *Martin* was consolidated with *Howerton*.  ECF No. 82; (Guglielmo Decl., ¶12; Halunen Decl., ¶32).

9

### C.     Plaintiffs' Pre-Complaint Due Diligence

Independently from each other, Plaintiffs investigated the facts underlying the allegations in the complaints ***many months*** prior to bringing their actions. (Guglielmo Decl., ¶¶3-4; Halunen Decl., ¶7; Declaration of Michael R. Reese ("Reese Decl."), ¶¶7-13).  Plaintiffs reviewed and scrutinized the Truvia Consumer Products' labeling and advertising and conducted independent scientific research regarding the manufacturing process for the Truvia Consumer Products, including the methods for producing Rebaudioside A and erythritol, as well as the use of dextrose derived from genetically modified corn as a feedstock in the erythritol production process.  (Guglielmo Decl., ¶4; Halunen Decl., ¶¶10-11).  Counsel for Plaintiffs Martin and Barry also consulted with an expert to thoroughly understand the complex scientific issues involved.  (Halunen Decl., ¶7).  Counsel for Plaintiffs Howerton, Calderon and Pasarell consulted with potential marketing and labeling experts to assist it in developing the claims.  (Guglielmo Decl., ¶4).

### D.     Plaintiffs Martin and Barry's Initial Settlement Negotiations

Early in the litigation, counsel for Martin and Barry and Cargill agreed there were practical reasons for exploring the potential for early resolution of this matter. (Halunen Decl., ¶8; Reese Decl., ¶8).  Before attending mediation, counsel for Martin and Barry conducted an extensive and thorough examination, investigation, and evaluation of the relevant law, facts, and allegations to assess the merits of the

potential claims to determine the strength of both defenses and liability. (*Id.*). During that time, counsel for Martin and Barry and Cargill discussed Cargill's defenses to claims and dispositive motions. (*Id.*). As a prerequisite to mediation, Plaintiffs Martin and Barry required Cargill to provide discovery regarding the labeling of the Truvia Consumer Products, including information concerning marketing, label design, product formulation, manufacturing processes for the product ingredients, profit and loss statements, information regarding Cargill's sales to grocery stores and other retailers, and Food and Drug Administration and other regulatory submissions. (*Id.*, ¶9). Prior to mediation, Plaintiffs Martin and Barry and Cargill exchanged extensive correspondence and held numerous teleconferences to discuss the parameters for mediation. (*Id.*, ¶13).

### E.   Plaintiffs' Counsel Work Together to Reach the Proposed Settlement

Despite the complicated and sometimes contentious procedural history in this case, Plaintiffs' Counsel determined the class was best served if all interests were aligned. (Guglielmo Decl., ¶13; Halunen Decl., ¶33; Reese Decl., ¶34). For several months after denial of preliminary approval of the Martin Settlement, all Plaintiffs' Counsel and Cargill worked to amend the Settlement Agreement to include all pending actions. (*Id.*). Counsel for Plaintiff Howerton reviewed the same pre-mediation discovery made available to Plaintiffs Martin and Barry. (Guglielmo Decl., ¶13). In this Settlement Agreement, Plaintiffs' Counsel were

able to create a $6.1 million settlement fund, an $800,000 enhancement over the Martin Settlement, and address the concerns Judge Kyle raised at the *Martin* preliminary approval hearing. (Guglielmo Decl., ¶15; Halunen Decl., ¶33). The Settlement demonstrates that the best practicable result was achieved for the Class.

## III.   THE TERMS OF THE PROPOSED SETTLEMENT

In exchange for a narrowly tailored Class Member release that is limited to the claims that were based upon the specific facts alleged in this case, (§7.1-7.4[2]), Cargill has agreed to undertake several important remedial measures. First, to remedy the alleged misrepresentations on the Truvia Consumer Product labels, Cargill has agreed to change its marketing and labeling. Second, Cargill will contribute $6.1 million into an independently-administered settlement fund, which will be used chiefly to compensate users of the Truvia Consumer Products who were misled by Cargill's past labeling practices, as well as to disseminate notice to the Class such that affected persons may avail themselves of this remedial monetary payment. Third, Cargill agrees to certification of the Settlement Class for purposes of achieving settlement. Finally, Cargill will pay judicially approved incentive awards and reasonable attorneys' fees and costs, which shall not exceed $1.83 million.

---

[2]   Unless otherwise specified, all section (§) references in this Memorandum are to the Settlement Agreement filed concurrently herewith.

**A.     Cargill Must Pay a Substantial Sum into a Fund to Compensate Those Harmed by Its Allegedly Deceptive Labeling**

Under the terms of the Settlement Agreement, Settlement Class Members who submit Claims have two options for recovery, depending on their personal preference.  (§4.3).  The first option is to receive cash in an amount ranging from $7.50 to $45.00, based on the dollar amount, or the number, of their purchases during the Class Period.  (§§4.3, 4.4).  Alternatively, Settlement Class Members can receive Eligible Product Vouchers valued from $18.00 to $90.00, based on the dollar amount, or the number, of their purchases during the Class Period.  (*Id.*).  If, after the payment of all valid Claims and all other costs and fees specified in the Agreement, any residual funds remain in the Settlement Fund, each Claim shall be proportionately increased on a *pro rata* basis up to one hundred percent (100%) of the Eligible Settlement Class Member's Initial Claim Amount.   (§4.6(a)). Conversely, if the Settlement Fund is insufficient to cover all valid Claims and all other costs and fees, each Claim shall be reduced on a *pro rata* basis.  (§4.6(b)).

If any funds remain in the Settlement Fund balance following the calculation detailed above, then, upon motion by Plaintiffs and upon approval by the Court pursuant to the *cy pres* doctrine, the Settlement Administrator shall equally distribute the Residual Funds to the following non-profit organizations: National Consumer Law Center and Consumer Federation of America.  (§4.6(c)).   The Residual Funds will not be returned to Cargill.  (*Id.*).   Cargill represents and

13

warrants that any payment of Residual Funds to any charities, non-profit organizations, or government entities shall not reduce any of its donations to any charitable foundation and/or non-profit organization. (*Id.*).

### B. Cargill Must Change Its Business Practices So As To Be Truthful in Labeling the Truvia Consumer Products

The Settlement requires Cargill to modify the labeling of the Truvia Consumer Products and to modify the Truvia.com website. (§§4.7, 4.8). Specifically, Cargill will add an asterisk immediately following the "Nature's Calorie-Free Sweetener" tagline on the Truvia Natural Sweetener packaging, along with adding the following statement or something substantially similar on the back panel of the Truvia Natural Sweetener packaging, below the ingredients panel: "*For more information about our ingredients go to Truvia.com/FAQ." On the box of packets, this will be done on both the front of the package and the top of the package if, at Cargill's sole discretion, the "Nature's Calorie-Free Sweetener" tagline is used. The asterisk and statement set forth above will also appear after any language that says "Truvia Natural Sweetener provides the same sweetness as two teaspoons of sugar." Additionally, Cargill will remove the phrase "similar to making tea" on all Truvia Consumer Product packaging. (§4.7(b)(ii)).

Cargill agrees to modify the description of erythritol on the box panel of the Truvia Consumer Products, to replace the phrase "Erythritol is a natural sweetener, produced by a natural process, and is also found in fruits like grapes and pears."

14

Cargill will substitute with the following or substantially similar language: "Erythritol is a natural sweetener, produced by a fermentation process. Erythritol is also found in fruits like grapes and pears." (§4.7(b)(i)).

On any Truvia Consumer Product packaging that describes erythritol or that the stevia leaves are steeped in water, Cargill will include a reference to www.Truvia.com/FAQ on the same panel or side as the description, where consumers can find further information. (§4.7(b)(iii)). On boxes of Truvia Natural Sweetener, Cargill agrees to put an asterisk on the side panel either after the phrase about erythritol, referenced in §4.7(b)(i), above or after the phrase currently on the label which reads "Natural flavors complement the clean sweet taste of Truvia natural sweetener." The asterisk will reference "*For more information about our ingredients go to Truvia.com/FAQ." described above.

On bags of Truvia baking blend, Cargill will likewise include an asterisk, or something similar, after "Natural Ingredients" on the front of the package directing consumers to Cargill's website for more information. (§4.7(a)(v)).

Cargill also agrees to make significant additions to its website to fully explain the manufacturing processes for the ingredients in the Truvia Consumer Products. (§4.8). The Truvia.com FAQ website modifications will include significant additions that will provide information regarding the Truvia Consumer Products, the processes for making them, and why Cargill believes these products

15

are natural.  (*See id.*).  Critically, Cargill will be removing the language currently on the website that likens the stevia leaf processing to "making tea" and the suggestion that the erythritol in Truvia Consumer Products comes from fruit.  (*See id.*).  With these additions, consumers will be able to obtain information regarding the source and processing of the ingredients in the Truvia Consumer Products.

Plaintiffs' Counsel believe that the agreed-to modifications are sufficient to prevent consumers from being deceived by the "natural" claims on the Truvia Consumer Products' labels.  While the Truvia® Natural Sweetener brand still exists, the modifications to the labeling and substantial additions to the Truvia.com/FAQ website remedy any confusion reasonable consumers may have with regard to Cargill's "natural" claims.  The injunctive relief provides consumers with significant information to make their own determination as to whether they deem the Truvia Consumer Products "natural."

### C.    Cargill Agrees to Class Certification for Settlement Purposes Only

Plaintiffs seek certification pursuant to Fed. R. Civ. P. 23(a) and (b)(3), and Cargill agrees to certification of the proposed Settlement Class for purposes of achieving settlement.  Cargill has reserved all of its objections to class certification for litigation purposes, and has reserved all rights to challenge certification of a class in this case in the event final approval of the Settlement does not occur.

D.      **Cargill Will Pay Plaintiffs' Incentive Awards and Court-Awarded Attorneys' Fees and Litigation Costs**

The Settlement Agreement provides that Plaintiffs' Counsel may apply for an award of reasonable Attorney's Fees and Expenses not to exceed 30% of the total sum of the Administration Fund and Settlement Fund ($1.83 million), and an Incentive Award to the Plaintiffs of up to $2,000.00 each. (§§8.1, 8.5). Defendant agrees not to oppose these applications. (§§8.1, 8.5).

IV.   **THE COURT SHOULD PRELIMINARY APPROVE THE SETTLEMENT**

Plaintiffs' Counsel have worked diligently to reach the Proposed Settlement and believe the claims resolved in the Proposed Settlement have merit. (Guglielmo Decl., ¶20; Halunen Decl., ¶37; Reese Decl., ¶¶28-30). Plaintiffs and their counsel recognize, however, the expense and length of continued proceedings necessary to prosecute the claims through trial and appeal and have taken into account the uncertain outcome and risk of litigation, as well as the difficulties and delays inherent in such litigation. (Guglielmo Decl., ¶21; Halunen Decl., ¶38). Plaintiffs' Counsel have evaluated the various state consumer protection laws, as well as the legal landscape, to determine the strength of the claims, the likelihood of success, and the parameters within which courts have assessed settlements similar to the instant Settlement. (Guglielmo Decl., ¶14; Halunen Decl., ¶12). They believe this Settlement confers substantial benefits upon the Settlement Class. (Guglielmo

Decl., ¶21; Halunen Decl., ¶38).  Based on the above-described evaluation, Plaintiffs' Counsel have determined that the Settlement is fair, reasonable, and adequate and in the best interest of the Settlement Class.  (*Id.*).

Cargill has denied, and continues to deny, that its labeling of the Truvia Consumer Products is false, deceptive, or misleading to consumers or violates any legal requirement.  (Guglielmo Decl., ¶22; Halunen Decl., ¶39).  Cargill's willingness to resolve the Action on the terms and conditions embodied in the Settlement is based on, *inter alia*: (i) the time and expense associated with litigating this Action through trial and any appeals; (ii) the benefits of resolving the Action, including limiting further expense, inconvenience, and distraction, disposing of burdensome litigation, and permitting Defendant to conduct its business unhampered by the distractions of continued litigation; and (iii) the uncertainty and risk inherent in any litigation.

## A.    Legal Standard

"The Ninth Circuit has stated that 'there is an overriding public interest in settling and quieting litigation,' and this is 'particularly true in class action suits.'" *Lundell v. Dell, Inc.,* No. C05-3970 JWRS, 2006 WL 3507938, at *3 (N.D. Cal. Dec. 5, 2006) (citing *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). Approval of a class action settlement is a two-step process; first, the court enters a

preliminary approval order, and second, following notice of the proposed settlement to the class and a final fairness hearing, the court enters a final approval order. *West v. Circle K Stores, Inc.*, No. Civ. S-04-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006); Manual for Complex Litigation §13.14 (4th ed. 2004). By this motion, Plaintiffs request that the Court take the first step and preliminarily approve the proposed Settlement, thereby allowing notice of the Settlement and the final approval hearing to be sent to Settlement Class.

A district court may approve a class action settlement only after determining it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, a court should consider: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 576-77 (9th Cir. 2004). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of S.F.*, 688 F.2d

615, 625 (9th Cir. 1982).  As explained by the court in *West*, "[g]iven that some of these factors cannot be fully assessed until the court conducts its fairness hearing, a full fairness analysis is unnecessary at [the preliminary approval] stage[.]" 2006 WL 1652598, at *9.[3]  Accordingly, when determining whether to grant preliminary approval, the Court should "simply conduct a cursory review of the terms of the parties' settlement for the purpose of resolving any glaring deficiencies before ordering the parties to send the proposal to class members."  *Id*.  Preliminary approval of a settlement and notice to the class is appropriate if "'the proposed settlement appears to be [1] the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval.'"  *In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  Even though the Court need not, at the preliminary approval stage, assess the final approval factors, a review of those factors shows that this Settlement merits preliminary approval.

### B.    The Factors Weigh in Favor of Granting Preliminary Approval

### 1.    The Settlement Is the Result of Arm's-Length Negotiations

The courts of this Circuit "put a good deal of stock in the product of an

---

[3]    Unless otherwise indicated, all internal citations are omitted and emphasis is added.

arms-length, non-collusive, negotiated resolution . . . and have never prescribed a particular formula by which the outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). This Settlement was achieved after nearly a year of zealous negotiations by the Parties on behalf of their respective clients and only after multiple settlement proposals were exchanged, rejected, and then modified prior to being accepted. (Guglielmo Decl., ¶16; Halunen Decl., ¶34). Cargill and Plaintiffs Martin and Barry spent many months mediating with the guidance and direct involvement of Judge Rosenbaum. (Halunen Decl., ¶¶14-15 & 17-18; Reese Decl., ¶¶14-16). Thereafter, all Parties worked to fashion a Settlement and address the concerns raised by Judge Kyle. (Guglielmo Decl., ¶¶13-15; Halunen Decl., ¶33; Reese Decl., ¶¶24-25). As detailed above, prior to agreeing to the Settlement, Plaintiffs' Counsel conducted extensive independent investigations. (Guglielmo Decl., ¶¶3-4; Halunen Decl., ¶9). Further, Plaintiffs' Counsel obtained extensive information and documents from Cargill through confidential, settlement-related discovery. (Guglielmo Decl., ¶13; Halunen Decl., ¶10). It was through this settlement-related discovery that Plaintiffs' Counsel obtained a full understanding of the processing of the Truvia Consumer Products' ingredients, which Cargill used as a basis for its labeling. (Guglielmo Decl., ¶14; Halunen Decl., ¶10). A presumption of fairness arises when a settlement is negotiated at arm's length by well-informed counsel. *Nigh v. Humphreys*

21

*Pharmacal, Inc.*, No. 12cv2714-MMA-DHB, 2013 WL 5995382, at *7 (S.D. Cal. Oct. 23, 2013).  This presumption is supported by the complete lack of evidence of collusion between the Parties.  Thus, this factor weighs in favor of approval.

### 2. The Strength of Plaintiffs' Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation

"It can be difficult to ascertain with precision the likelihood of success at trial.  The Court cannot and need not determine the merits of the contested facts and legal issues at this stage, and to the extent courts assess this factor, it is to 'determine whether the decision to settle is a good value for a relatively weak case or a sell-out of an extraordinary strong case.'"  *Misra* v. *Decision One Mortg. Co.*, 07-cv-0994 DOC, 2009 WL 4581276, at *7 (C.D. Cal. Apr. 13, 2009).  In this case, Plaintiffs are confident in the strength of their claims. (Guglielmo Decl., ¶20; Halunen Decl., ¶37).  Based on extensive investigation and discovery, Plaintiffs believe that they could obtain class certification, defeat all dispositive motions filed by Defendant, and proceed to a trial on the merits.  (*Id*.).  Plaintiffs nonetheless recognize that Defendant has several factual and legal defenses that, if successful, would defeat or substantially impair the value of Plaintiffs' claims. (Guglielmo Decl., ¶21; Halunen Decl., ¶38).  Cargill has denied, and continues to deny, any liability and maintains that its current labeling is truthful and not misleading.  (Guglielmo Decl., ¶22; Halunen Decl., ¶39).  Cargill also has indicated that, should this matter proceed, it will vigorously oppose certification of

22

a litigation class, arguing (among other things) that individualized issues related to damages predominate because the proposed class members purchased the Truvia Consumer Products for varying reasons, had varying interpretations of the statements on the Product labels, and purchased the Truvia Consumer Products at various prices set by independent retailers. (*Id.*). If the case proceeded without settlement, Cargill also likely would argue that the class is not ascertainable and the class cannot be certified nationwide.

Litigation to date has been costly, and certainly further litigation would be costly, complex, and time consuming. Such litigation could include dispositive motions; contested class certification proceedings and appeals; costly nationwide discovery, including dozens of depositions, interrogatories, requests for admission, and voluminous document production; costly merits and class expert reports and discovery; and trial. Each step towards summary judgment and trial would likely be subject to Defendant's vigorous opposition and appeal. One of the hotly contested issues in this action would be consumer perception of "natural" to determine the materiality and deceptiveness of Defendant's labels. Such issues would be the subject of competing expert testimony subject to *Daubert* motions. The costs and risks associated with continuing to litigate this action would require extensive resources and Court time. "Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than

further protracted and uncertain litigation." *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). Thus, "'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Id.* at 526. As discussed herein, as the Settlement confers an excellent result on the Class, approval is preferable to undeniable costly and lengthy litigation. *See, e.g., Almodova v. City & Cnty. of Honolulu*, Civil No. 07-00378DAE-LEK, 2010 WL 1372298, at *5 (D. Haw. Mar. 31, 2010) *report and recommendation adopted*, CIV.0700378-DAE-LEK, 2010 WL 1644971 (D. Haw. Apr. 20, 2010) (cost of continued litigation favored preliminary approval where significant discovery remained, class representatives had not been selected, dispositive motions had not been filed, and expert witnesses on damages would be necessary).

### 3. The Risk of Maintaining Class Action Status through Trial

Although Plaintiffs feel confident that class certification would be granted, Defendant has made clear that it intends to contest class certification. *See supra* Part IV.B.2. Further, Defendant has indicated that should the class be certified and this settlement not approved, it intends to file an interlocutory appeal. This raises further risk that the class may be decertified. As the value of each unit is $6.00, it is unlikely that any individual plaintiff would pursue litigation to recover this amount. As such, a class action represents consumers' best chance for recovery.

Given this risk, this factor weighs in favor of preliminary approval. *See, e.g., Nigh*, 2013 WL 5995382, at *7 (finding factor favored approval where defendants represented they would vigorously contest class certification).

### 4.    The Amount Offered in Settlement

"[T]he very essence of a settlement is compromise, 'yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624.  The Ninth Circuit has held that "'it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.'" *Id.* at 625.  Thus, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Id.* at 628.  "This is particularly true in cases, such as this, where monetary relief is but one form of the relief requested by the plaintiffs." *Id.*  "It is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Id.*

At trial, Plaintiffs would pursue judgment against Defendant seeking, *inter alia*, restitution for Class Members and injunctive relief.  As outlined above, this is the precise relief the Settlement provides to the Settlement Class - $6.1 million in monetary relief for the class as well as injunctive relief.  The Settlement enables

Settlement Class Members who purchased even one Truvia Consumer Product to receive $7.50, which is more than the MSRP, or 3 Vouchers to obtain 3 Eligible Voucher Products.  (§4.4).  Settlement Class Members even could obtain up to 100% of their purchase price.  (§§4.4, 4.6(a)).  This relief may not have been available had the Settlement not been reached.

Furthermore, as discussed in more detail above, Cargill has agreed to make significant label changes, including qualification of the "natural" representations[4] with detailed explanations of how the Truvia Consumer Products are made, how the erythritol and stevia leaf extract in the Truvia Consumer Products are produced, and whether the Truvia Consumer Products contain or are derived from genetically modified ingredients.  (§§4.7, 4.8).  These labeling changes will allow consumers to attain a clear understanding of how the Truvia Consumer Products and their ingredients are produced and, as a result, what Cargill means when it uses the term "natural" on the Product labeling.  Thus, the $6,100,000 settlement and meaningful injunctive relief is fair and reasonable for an early resolution of these claims, prior to the extensive litigation discussed in the proceeding section.  *See supra* Part IV.B.2; §4.1(a).

---

[4]     Or, in at least one case, Cargill has agreed to remove the "natural" representation altogether, at its option.

### 5.     The Stage of the Proceedings

"In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239.  This is especially true "where there has been sufficient information sharing and cooperation in providing access to necessary data[.]"  *Misra*, 2009 WL 4581276, at *8.  "What is required is that 'sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently.'" *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013).

As discussed above, Plaintiffs' Counsel obtained extensive information and documents from Cargill through confidential discovery, including information concerning marketing, label design, product formulation, manufacturing processes for the product ingredients, profit and loss statements, information regarding Cargill's sales to grocery stores and other retailers, and Food and Drug Administration and other regulatory submissions.  (Guglielmo Decl., ¶13; Halunen Decl., ¶9).   Through this discovery, Plaintiffs' Counsel obtained a full understanding of the processing of the Truvia Consumer Products' ingredients, which Cargill used as a basis for its labeling.  (Guglielmo Decl., ¶14; Halunen Decl., ¶10).  Further, Plaintiffs' Counsel extensively investigated the ingredients in the Truvia Consumer Products, including the methods for producing Rebaudioside

A and erythritol, as well as the use of dextrose derived from genetically modified corn as a feedstock in the erythritol production process. (Guglielmo Decl., ¶¶3-4; Halunen Decl., ¶11). Thus, this factor also weighs in favor of preliminary approval. *See, e.g., Nigh*, 2013 WL 5995382, at *7 (finding factor favored of approval where substantial discovery was obtained through settlement negotiations); *Almodova*, 2010 WL 1372298, at *5 (finding factor favored preliminary approval where case in early discovery stage).

### 6.  The Experience and Views of Counsel

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528; "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Counsel, for all parties, are highly experienced in complex class action litigation. For example, Class Counsel have qualified as lead counsel in other class actions and have a proven track record of successful prosecution of significant class actions. (Guglielmo Decl., ¶26, Ex. 2; Halunen Decl., ¶44, Ex. D.; Reese Decl., ¶35, Ex. A). All counsel have been privy to the entirety of the record in this case. They have reviewed the discovery provided during the settlement negotiations and approved the attached Settlement Agreement. It is the collective

28

opinion of all counsel that the attached Settlement is in the best interest of the Settlement Class.  Thus, this factor weighs in favor of preliminary approval.

### 7.    The Presence of a Governmental Participant

This factor is irrelevant.  There has been no government action in this matter, which is a dispute between private citizens.  Any government reaction to the Settlement can be assessed at the final approval hearing after notice is sent to the U.S. and state attorneys general and the United States CAFA Coordinator pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1715. (§5.1(b)).

### 8.    The Reaction of the Class Members to the Settlement

Each of the Plaintiffs has agreed to the settlement terms and has signed the Settlement Agreement.  Formal notice to the Settlement Class will be provided upon preliminary approval by the Court.  Thus, this factor is more appropriately weighed at the final approval stage.  *See, e.g., Rodriguez v. D.M. Camp & Sons*, 1:09-CV-00700-AWI, 2012 WL 6115651, at *8 (E.D. Cal. Dec. 7, 2012).

In sum, the proposed Settlement achieves the primary relief the Class would have pursued at trial and avoids the risks associated with possible adverse rulings if the case were to be litigated.  Preliminary approval is therefore appropriate to avoid the uncertainties of continued litigation and in light of the extraordinary significant relief afforded to the Settlement Class.  Accordingly, the Court should

preliminarily approve the Settlement.

## V.   THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT CLASS

### A.   The Proposed Settlement Class

For settlement purposes only, Plaintiffs request that the Court conditionally certify pursuant to Rule 23 the Settlement Class defined as:

> All persons who, during the Class Period (July 1, 2008 to the date of preliminary approval of the Settlement), both resided in the United States and purchased in the United States any of the Truvia Consumer Products for their household use or personal consumption and not for resale.  Excluded from the Settlement Class are: (a) Cargill's board members or executive-level officers, including its attorneys; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Settlement Class in accordance with the procedures approved by the Court.

(§2.29).  The purpose of conditional class certification is to allow notice of the proposed settlement to be directed to members of the conditionally approved class. *Cf. West*, 2006 WL 1652598, at *2 (final settlement approval occurs after notice given to conditionally certified class); *see also In re Lupron Mktg. and Sales Practices Litig.*, 345 F. Supp. 2d 135, 138 (D. Mass. 2004) ("no practical way" for court to ascertain fairness of proposed class settlement "other than by proceeding with conditional class certification and giving notice with the opportunity for its members to opt in or out of the settlement"). Thus, class actions are routinely certified as part of proposed settlements. *See Donkerbrook v. Title Guar. Escrow*

*Serv., Inc.*, Civil No. 10-00616 LEK-RLP, 2011 WL 1587521, at \*1-2 (D. Haw. Apr. 25, 2011) (certifying the settlement class at the same time as granting preliminary approval of the proposed settlement); *Int. Longshore & Warehouse Union, Local 142 v. C. Brewer and Co., Ltd.*, Civil No. 06-00260-SOM-LEK, 2007 WL 4145228, at \*1-2 (D. Haw. Nov. 20, 2007).  As discussed below, the proposed Settlement Class satisfies all of the Rule 23 certification requirements.

### B.    Legal Standard

To certify the Settlement Class, the Rule 23(a) and at least one prong of the Rule 23(b) criteria need to be satisfied.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *see Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).  Rule 23(a) provides that an action may be maintained as a class action if: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see, Leyva*, 716 F.3d at 512.  As is relevant here, the Rule 23(b)(3) requirements have been distilled into two general elements, commonly referred to as the "predominance" and "superiority" requirements.  *Id.* at 512.  The Settlement Class satisfies each Rule 23 requirement.

## C.     The Settlement Class Satisfies the Requirements of Rule 23(a)

### 1.     The Class Is Sufficiently Numerous

The Rule 23(a) numerosity requirement "is met when a class includes at least 40 members." *Baker v. Castle & Cooke Homes Hawaii, Inc.*, Civil No. 11-00616 SOM-RLP, 2014 WL 1669131, at \*4 (D. Haw. Jan. 31, 2014) *report and recommendation adopted as modified*, CIV. 11-00616 SOM, 2014 WL 1669158 (D. Haw. Apr. 28, 2014).   Here it is estimated that five million households purchased the Truvia Consumer Products during the Class Period.   (Dahl Aff.,[5] ¶11).   This easily exceeds the threshold for establishing numerosity.  *See, e.g., Int'l Longshore*, 2007 WL 4145228, at \*1 (150 persons satisfied numerosity).

### 2.     Common Questions of Law and Fact Exist

For Plaintiffs to maintain a class action there must be "common questions of law or fact among members of the class."   Fed. R. Civ. P. 23(a)(2).   "Th[e] common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).   "The key inquiry is not whether the plaintiffs have raised common questions, 'even in

---

[5] Affidavit of Jeffrey D. Dahl with Respect to Settlement Notice Plan attached as Exhibit C to the Settlement Agreement ("Dahl Aff.").

droves,' but rather, whether class treatment will 'generate common *answers* apt to drive the resolution of the litigation." *Abdullah v. U.S. Sec. Assoc., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Wal-Mart*, 131 S.Ct. at 2551) (emphasis in original). "This does not, however, mean that *every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a single *significant* question of law or fact." *Id.* (emphasis in orginal).

Here, the commonality requirement is easily satisfied, as Defendant made uniform representations on the Truvia Consumer Product labeling during the Class Period as to whether the Products and ingredients are "natural." As discussed below in the context of predominance, the core questions of law or fact are not only common to all class members, but also predominate in this litigation. The determination of the following common questions will resolve issues central to the validity of Plaintiffs' and Settlement Class members' claims: (i) whether Defendant's marketing, advertising, packaging, labeling, distributing, and selling of the Truvia Consumer Products constitute (a) an unfair, unlawful, or fraudulent practice and (b) false advertising; (ii) whether Defendant materially misrepresented to the Class members that the Truvia Consumer Products are "natural," (iii) whether Defendant's alleged misrepresentations and omissions were material to reasonable consumers, and (iv) whether Defendant's alleged conduct injured consumers and, if so, the extent of the injury. These common issues of law and

fact satisfy Rule 23(a)(2)'s commonality test. *See, e.g., Forcellati v. Hyland's, Inc.*, CV 12-1983-GHK(MRWx), 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014); *Nigh*, 2013 WL 5995382, at *4.

### 3. Plaintiffs' Claims Are Typical of Those of the Class

Rule 23(a)(3) requires "the claims and defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Representative claims are typical if they are "reasonably coextensive with those of the absent class members; they need not be substantially identical." *Dukes v. Walmart, Inc.*, 509 F.3d 1168, 1184 (9th Cir. 2007). "In determining whether typicality is met, the focus should be 'on the defendants' conduct and the plaintiff's legal theory,' not the injury caused to the plaintiff." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005). Typicality is met here as Plaintiffs and the proposed Class assert the same claims arising from the same factual predicate, that is, Defendant's marketing and labeling of a purportedly "all natural" sugar alternative that Plaintiffs allege contains synthetic ingredients and is heavily chemically processed. Thus, Plaintiffs and Settlement Class Members allegedly sustained the same injuries and damages arising out of Cargill's conduct and share the same interests in determining whether Truvia Consumer Products are deceptively labeled. *Nigh*, 2013 WL 5995382, at *4; *Weeks v. Kellogg Co.*, CV 09-08102 (MMM)(RZX), 2013 WL 6531177, at *7 (C.D. Cal. Nov. 23, 2013).

Consequently, Plaintiffs satisfy the typicality requirement.

### 4.      Adequate Representation Is Satisfied

Finally, Plaintiffs must demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit established a two prong test for this requirement: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Absent evidence to the contrary, a proposed class representative's adequacy of representation is presumed. *Californians for Disability Rights, Inc. v. California Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008).

Here, Plaintiffs are members of the Class they seek to represent. Plaintiffs' individual and the Settlement Class's claims arise from the same misconduct of Defendant's falsely labeling and advertising the Truvia Consumer Products. Moreover, Plaintiffs have sought and obtained remedies equally applicable and beneficial to the Settlement Class as to themselves. Thus, Plaintiffs share the same claims and interest in obtaining relief as all other Settlement Class members and have no conflicts of interests with other Settlement Class members. Plaintiffs have demonstrated their adequacy by diligently advancing this litigation, including achievement of the proposed Settlement that is presently before the Court. Further,

Plaintiffs have selected highly experienced complex class action attorneys, who have qualified as lead counsel in other class actions and have a proven track record of successful prosecution of significant class actions. (Guglielmo Decl., ¶26; Halunen Decl., ¶44; Ex. D.; Reese Decl., ¶35, Ex. A). Indeed, as with the proposed representatives themselves, "[i]n the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the class action." *Halbach v. Great-W. Life & Annuity Ins. Co.*, No. 4:05CV02399 ERW, 2007 WL 1018658, at *5 (E.D. Mo. Apr. 2, 2007).[6] Thus, the adequacy of representation requirement is satisfied. As such, Plaintiffs respectfully request they be appointed Class Representatives. *See, e.g., Int'l Longshore*, 2007 WL 4145228, at *1-2 (finding named plaintiffs to be adequate and appointing them as class representatives).

### D.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Plaintiffs seek to have the proposed Settlement Class certified pursuant to Rule 23(b)(3), as: (1) common questions of law or fact will predominate over questions affecting only individual members; and (2) a class action is "superior to

---

[6]    *See also Cabbat v. Philip Morris USA, Inc.*, Civil No. 10-00162 DKW/BMK, 2014 WL 32172, at *8 (D. Haw. Jan. 6, 2014); *Wadsworth v. KSL Grand Wailea Resort, Inc.*, Civil No. 08-00527 ACK-RLP, 2011 WL 2938469, at *3 (D. Haw. June 27, 2011); *Kyne v. Ritz-Carlton Hotel, L.L.C.*, Civil No. 08-00530 ACK-RLP, 2011WL 2938502, at *3 (D. Haw. June 27, 2011).

other available methods" of adjudicating the case.  Fed. R. Civ. P 23(b)(3).

### 1.    Common Legal and Factual Questions Predominate

With regard to Rule 23(b)(3) predominance, the court analyzes whether the "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  As stated by the Supreme Court, the "[p]redominance is a test readily met in certain cases alleging consumer . . . fraud." *Id*. at 625.  "[T]he common issues must be 'a significant aspect of the case and they [must] be resolved for all members of the class in a single adjudication[.]'" *Davis v. Four Seasons Hotel Ltd.*, 277 F.R.D. 429, 437 (D. Haw. 2011).

The central issues in this litigation with respect to the Settlement Class arise out of Plaintiffs' efforts to remedy a common legal grievance concerning Defendant's marketing and sale of the Truvia Consumer Products.  The common remedial theories – modification of the "natural" representations concerning the Truvia Consumer Products, reimbursement of Class Members for the purchase price – were all addressed in the Parties' negotiations and are addressed in the Proposed Settlement.  Common, predominant questions include whether Defendant is responsible for one or more of the violations of law of which Plaintiffs complain and whether Plaintiffs are entitled to injunctive and monetary relief.  Because these overriding questions focus on Defendant's conduct – and not on Plaintiffs' conduct – and because they concern the core question of liability, they are predominant.

*See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).  The proposed Settlement accomplishes Plaintiffs' collective goal – namely, it resolves and settles with finality all of the claims asserted against Defendant.  Thus, predominance is satisfied.  *See, e.g., Weeks*, 2013 WL 6531177, at *9; *Nigh*, 2013 WL 5995382, at *5.

### 2.    A Class Action Is the Superior Means to Adjudicate the Claims

Rule 23(b)(3) sets forth factors for determining whether "a class action [is] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  As explained by the Ninth Circuit in *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001), "'consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis.'"  *Id*. at 1190.

Rule 23(b)(3)'s four "superiority" factors weigh heavily in favor of class certification here.  First, although there have been several actions filed by different class members, none have been filed on a strictly individual basis.  Each case was filed as a class, thus no class member has shown interest in handling the claims made in the complaint in an individual capacity.  Second, Defendant has made clear that should this settlement not be approved, it intends to vigorously defend against the claims.  Third, the procedural history demonstrates that several courts

have found the current venue the most desirable for conducting this action.

Finally, given the vast experience of Plaintiffs' Counsel in conducting class

actions, and the predominance of the legal and factual questions involved in the

current case, management of the class would not be difficult.  Liability in this

action will turn on whether Defendant's labeling message is likely to deceive the

reasonable consumer.  Because establishing this for one Class member is the same

as for any other, judicial efficiency weighs in favor of a class action.  Likewise, it

is not economically feasible for the many thousands of Settlement Class members

to pursue their claims against Defendant on an individual basis given the average

retail price of Truvia compared to the expense of establishing these claims.

*Hanlon*, 150 F.3d at 1023.  Here, a class action is superior to individual suits.  *See,*

*e.g.*, *Weeks*, 2013 WL 6531177, at *9.

In sum, the Court should conditionally certify the Settlement Class under

Rule 23(a) and (b)(3).

## E.    The Court Should Appoint Class Counsel for the Settlement Class

Rule 23(g)(1) requires the Court to appoint counsel to represent the interests

of the class.  *In re Rubber Chemicals Antitrust Litig*., 232 F.R.D. 346, 355 (N.D.

Cal. 2005).   For the reasons stated above in connection with the adequacy

requirements of Rule 23(a)(4), and as has been demonstrated thus far in this

litigation, the law firms retained by Plaintiffs to prosecute this class action are

39

"well equipped" to vigorously, competently and efficiently represent the Settlement Class. (Guglielmo Decl., ¶26; Halunen Decl., ¶44; Ex. D.; Reese Decl., ¶35, Ex. A). Accordingly, the Court should appoint Scott+Scott, Attorneys at Law, LLP, Halunen & Associates, and Reese Richman LLP as Class Counsel for the Settlement Class. *See, e.g., Int'l Longshore*, 2007 WL 4145228, at *2 (appointing adequate plaintiffs' counsel as class counsel).

## VI.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

Rule 23(e) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1). In addition, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

### A.   The Notice Plan

The Parties developed a robust notice program with the assistance of Dahl Administration, LLC, a company that specializes in the development and implementation of notice and settlement administration.[7] The Notice Plan includes: (a) direct mail notice to the approximately 3,500 Settlement Class

---

[7] The details of the notice program ("Notice Plan" or "Notice"), including the mediums utilized, design, and intended reach and frequency, are detailed in the attached Dahl Affidavit. (Settlement, Ex. C).

Members identified from Cargill's records; (b) published notice through the use of paid print media; (c) web-based notice using paid banner ads on targeted websites; (d) additional web-based notice using "keyword" searches displaying banner ads; (e) social media ads targeting relevant interest areas; (f) national media through the issuing of a press release distributed nationwide through PR Newswire; (g) a dedicated, informational website through which Settlement Class Members can obtain more detailed information about the Settlement and access case documents; and (h) a toll-free telephone helpline by which Settlement Class Members can obtain additional information about the Settlement and request a Class Notice and/or Claim Form.   (Dahl Aff., ¶¶14, 18-33; *see also* Dahl Aff., Exs. 2-5.) Further, pursuant to CAFA, notice of the Settlement will be mailed to state Attorneys General, the United States Attorney General, and the United States CAFA Coordinator.  (§5.1(b)).  The Notice Plan has been designed to obtain over 147 million individual print and digital impressions targeted to approximately 28 million persons in order to achieve sufficient scale and impression frequency to target approximately five million class members.  (Dahl Aff., ¶15).  Coverage and exposure will be further increased by the earned media campaign, the website, and the toll-free helpline.  (*Id.*).

### B.   The Proposed Method of Notice is Appropriate

The method proposed for providing notice to Class members is "reasonable"

and should be approved.  Notice to the Class will be achieved shortly after entry of the Preliminary Approval Order.  The Notice will be provided to Class members so that they have sufficient time to decide whether to participate in the settlement, object, or opt out.  Courts routinely find that similar comprehensive notice programs meet the requirements of due process and Rule 23.  *See, e.g., Arnold v. Fitflop USA, LLC*, 11-CV-0973 W (KSC), 2014 WL 1670133, at *4-5 (S.D. Cal. Apr. 28, 2014); *Beck-Ellman v. Kaz USA, Inc*., 3:10-CV-02134-H-DHB, 2013 WL 1748729, at *8 (S.D. Cal. Jan. 7, 2013).

### C.    The Proposed Content of Notice Is Adequate

Rule 23 requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The contents of the notice to class members "'is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."'"  *Rodriguez*, 563 F.3d at 962.

Here, the proposed Notice provides this "sufficient detail."  Together, they define the Class, explain all Class member rights, releases, and applicable deadlines, and describe in detail the injunctive and monetary terms of the settlement, including the procedures for allocating and distributing settlement funds among the Settlement Class Members.  They plainly indicate the time and

42

place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement. They detail the provisions for payment of attorneys' fees and incentive awards to the class representatives, and provide contact information for the putative Class Counsel. This comports with settlement notices upheld in other cases. *See, e.g., In re Wells Fargo Loan Processor Overtime Pay Litig.*, MDL Docket No. C-07-1841(EMC), 2011 WL 3352460, at *4 (N.D. Cal. Aug. 2, 2011) (notice adequate where "[i]t disclosed all material elements of the settlement, including class members' release of claims, their ability to opt out or object to the settlement, the amount of incentive awards and attorneys' fees sought, and estimates of the award members could expect to receive."); *Int'l Longshore*, 2007 WL 4145228, at *3. *See generally Rodriguez*, 563 F.3d at 962-63 (because "[s]ettlement notices are supposed to present information about a proposed settlement neutrally, simply, and understandably," they need not "detail the content of objections, or analyze the expected value" of fully litigating the case).

## VII.  PROPOSED SCHEDULE OF EVENTS

The last step in the settlement approval process is to hold a final fairness hearing at which the Court may hear all evidence and argument necessary to make the settlement evaluation. Proponents of the settlement may explain the terms and conditions of the settlement and offer argument in support of final approval. In

addition, settlement class members, or their counsel, may be heard in support of or in opposition to the Settlement Agreement.  The Court will determine after the Final Approval Hearing whether the settlement should be approved, and whether to enter a final order and judgment under Rule 23(e).

Plaintiffs propose the following schedule of events leading to the Final Approval Hearing as set forth in the proposed Preliminary Approval Order submitted herewith:

| Event | Time for Compliance |
|---|---|
| Preliminary Approval Hearing | July 21, 2014 at 9:45 a.m. Hawaii time |
| Entry of Preliminary Approval Order | TBD |
| Escrow of Administration Fund | Within 7 days after the entry of the Preliminary Approval Order |
| Commencement of Notice Plan | Within 14 days after the entry of the Preliminary Approval Order |
| Motion in Support of Final Approval of Settlement and Motion in Support of Award of Attorneys' Fees, Expenses and Incentive Awards | 44 days before the Final Approval Hearing |
| Mailing/Filing Deadline for Objections | 30 days before the Final Approval Hearing |
| Mailing Deadline for Requests for Exclusion ("Opt-outs") | 30 days before the Final Approval Hearing |
| Filing of Notice of Intent to Appear by any objector | 15 days before Final Approval Hearing |
| Service and Filing of Affidavit by Notice Administrator of Notice | 10 days prior to the Final Approval |

| Publication and Opt-outs | Hearing |
|---|---|
| Reply in Support of Motion for Final Approval of Settlement and Award of Attorneys' Fees, Expenses and Incentive Awards | 7 days before the Final Approval Hearing |
| Final Approval Hearing | Approximately 100 days from entry of Preliminary Approval Order |
| Proofs of Claim | Postmarked no later than 120 days from publication of notice |

This schedule is reasonable and provides due process for Settlement Class Members with respect to their Settlement rights.

## VIII. CONCLUSION

For the foregoing reasons, the Court should preliminarily approve Plaintiffs' Settlement with Defendant; conditionally certify the Settlement Class and appoint Plaintiffs as representatives of their respective proposed Settlement Class; approve the manner and form of notice to be furnished to conditional Settlement Class members; and schedule a fairness hearing under Federal Rule of Civil Procedure 23(e)(1)(C) for the purpose of determining whether the Settlement is fair, reasonable, and adequate and, therefore, deserving of final approval.

DATED: June 19, 2014          SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

                              */s/ Joseph P. Guglielmo*
                              Joseph P. Guglielmo (*pro hac vice*)
                              Erin Green Comite (*pro hac vice*)
                              The Chrysler Building

405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com

*Counsel for Plaintiffs Howerton, Calderon and Pasarell and the Proposed Class*

HALUNEN & ASSOCIATES

*/s/ Melissa Wolchansky*
Clayton D. Halunen (*pro hac vice*)
Melissa Wolchansky (*pro hac vice*)
1650 IDS Center
80 S 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
halunen@halunenlaw.com
wolchansky@halunenlaw.com

REESE RICHMAN LLP

*/s/ Michael R. Reese*
Michael R. Reese (*pro hac vice*)
Kim E. Richman (*pro hac vice*)
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
mreese@reeserichman.com
krichman.com

*Counsel for Plaintiffs Martin and Barry and the Proposed Class*

Lawrence W. Cohn
Attorney at Law

46

75-109 Lolo Lane
Kailua Kona, HI 96740
Telephone:  (808) 324-1611
Facsimile:  (808) 322-6168
elcohnhead@hawaii.rr.com

E. Kirk Wood
WOOD LAW FIRM, LLC
P. O. Box 382434
Birmingham, Alabama 35238-2434
Telephone:  (205) 908-4906
Facsimile:  (866) 747-3905
ekirkwood1@bellsouth.net

Greg L. Davis
DAVIS & TALIAFERRO
7031 Halcyon Park Drive
Montgomery, AL 36117
Telephone: 334-832-9080
Facsimile: 334-409-7001
gldavis@knology.net

*Additional Counsel for Plaintiff Howerton*

Jared H. Beck
BECK & LEE TRIAL LAWYERS
66 West Flagler Street, Suite 1000
Miami, Florida 33130
Telephone: (305) 789-0072
Facsimile: (786) 664-3334
jared@beckandlee.com

*Additional Counsel for Plaintiffs Howerton and
Pasarell*

Stanley D. Saltzman
Marcus J. Bradley
William A. Baird
MARLIN & SALTZMAN, LLP
29229 Canwood Street, Suite 208

47

Agoura Hills, CA  91301
Telephone:  (818) 991-8080
Facsimile:  (818) 991-8081
ssaltzman@marlinsaltzman.com
mbradley@marlinsaltzman.com
tbaird@marlinsaltzman.com

*Additional Counsel for Plaintiff Calderon*

BICKERTON LEE DANG & SULLIVAN LLP
James J. Bickerton
745 Fort Street
Honolulu, Hawaii 96813
Telephone: (808) 599-3811
Facsimile: (808) 533-2467
bickerton@bsds.com

*Additional Counsel for Plaintiffs Martin and Barry*