Joseph P. Guglielmo (*pro hac vice*)
Erin Green Comite (*pro hac vice*)
SCOTT+SCOTT, ATTORNEYS AT
LAW, LLP
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, New York 10174
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com

*Counsel for Plaintiffs Howerton,
Calderon and Pasarell and the
Proposed Class*

[Additional Counsel in Signature Block]

Clayton D. Halunen (*pro hac vice*)
Melissa Wolchansky (*pro hac vice*)
HALUNEN & ASSOCIATES
1650 IDS Center, 80 S. 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
halunen@halunenlaw.com
wolchansky@halunenlaw.com

Michael R. Reese (*pro hac vice*)
Kim E. Richman (*pro hac vice*)
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
mreese@reeserichman.com
krichman@reeserichman.com

*Counsel for Plaintiffs Martin and Barry
and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DENISE HOWERTON, ERIN CALDERON, and RUTH PASARELL, Individually and on Behalf of All Others Similarly Situated, | Civil No. 1:13-cv-00336 LEK-BMK |
| Plaintiffs, | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND REQUEST FOR ENTRY OF FINAL JUDGMENT** |
| vs. | |
| CARGILL, INC., | |
| Defendant. | **The Honorable Leslie E. Kobayashi** **Hearing: October 27, 2014 at 9:45 a.m.** |

[CAPTION CONTINUED ON NEXT PAGE]

MOLLY MARTIN and LAUREN
BARRY, on behalf of themselves and
others similarly situated,

        Plaintiffs,

    vs.

CARGILL, INC.,

        Defendant.

Civil No. 1:14-cv-00218-LEK-BMK

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ....................................................................1

II.  FACTUAL AND PROCEDURAL HISTORY ...........................................2

    A.   Brief Summary of Plaintiffs' Claims ................................................2

    B.   The Court Granted Preliminary Approval...........................................3

III. NOTICE TO THE SETTLEMENT CLASS ...............................................4

IV.  THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, AND THE COURT SHOULD GRANT FINAL APPROVAL.............................6

    A.   Cargill Must Refund Settlement Class Members.................................8

    B.   Cargill Must Change Its Business Practices So As To Be Transparent in Labeling the Truvia Consumer Products .........................................9

    C.   Cargill Will Pay Notice and Administration Costs, Plaintiffs' Incentive Awards, and Court-Awarded Attorneys' Fees and Litigation Costs ...............................................................................................10

    D.   Legal Standard................................................................................11

    E.   The Factors Weigh in Favor of Granting Final Approval..................12

        1.   The Settlement Is the Result of Arm's-Length Negotiations......12

        2.   The Strength of Plaintiffs' Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation....................................13

        3.   The Risk of Maintaining Class Action Status through Trial.......16

        4.   The Amount Offered in Settlement ...........................................17

        5.   The Stage of the Proceedings ....................................................18

        6.   The Experience and Views of Class Counsel.............................20

        7.   The Presence of a Governmental Participant .............................20

        8.   The Reaction of the Class Members to the Settlement ...............21

V.   THE COURT SHOULD CONFIRM CERTIFICATION OF THE SETTLEMENT CLASS ........................................................................22

    A.   The Settlement Class.......................................................................22

    B.   Legal Standard................................................................................22

C.    The Settlement Class Satisfies the Requirements of Rule 23(a).........23

     1.    The Class Is Sufficiently Numerous.............................................23

     2.    Common Questions of Law and Fact Exist................................23

     3.    Plaintiffs' Claims Are Typical of Those of the Class ................24

     4.    Adequate Representation Is Satisfied.........................................25

D.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)....26

     1.    Common Legal and Factual Questions Predominate .................27

     2.    A Class Action Is the Superior Means to Adjudicate the Claims ......................................................................................27

VI.    NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF DUE PROCESS.......................................................28

   A.    The Method of Notice was Appropriate..............................................29

   B.    The Content of Notice Was Adequate ................................................30

VI.    CONCLUSION............................................................................................31

# TABLE OF AUTHORITIES

**CASES**                                                              **Page(s)**

*Abdullah v. U.S. Sec. Assoc., Inc.*,
   731 F.3d 952 (9th Cir. 2013) ...................................................... 24

*Almodova v. City & Cnty. of Honolulu*,
   Civil No. 07-cv-00378-DAE-LEK, 2010 WL 1372298
   (D. Haw. Mar. 31, 2010) *report and recommendation adopted*,
   Civil No. No.07-cv-00378-DAE-LEK, 2010 WL 1644971
   (D. Haw. Apr. 20, 2010) ............................................................. 15

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................ 22, 27

*Arnold v. Fitflop USA, LLC*,
   Civil No. 11-cv-0973-KSC, 2014 WL 1670133
   (S.D. Cal. Apr. 28, 2014) ........................................................... 30

*Baker v. Castle & Cooke Homes Hawaii, Inc*.,
   Civil No. 11-cv-00616-SOM-RLP, 2014 WL 1669131
   (D. Haw. Jan. 31, 2014) ............................................................. 23

*Barbosa v. Cargill Meat Solutions Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ................................................. 19

*Cabbat v. Philip Morris USA, Inc.*,
   Civil No. 10-cv-00162- DKW/BMK, 2014 WL 32172
   (D. Haw. Jan. 6, 2014) ............................................................... 26

*Californians for Disability Rights, Inc. v. California Dep't of Transp.*,
   249 F.R.D. 334 (N.D. Cal. 2008) ................................................ 25

*Churchill Village, L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ................................................ 12, 21

*Dukes v. Walmart, Inc.*,
   509 F.3d 1168 (9th Cir. 2007) .................................................... 24

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)........................................................................ 16

*Halbach v. Great-W Life & Annuity Ins. Co.*,
    Civil No. 4:05-cv-02399-ERW, 2007 WL 1018658
    (E.D. Mo. Apr. 2, 2007) .............................................................. 26

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .................................................. 11-12, 27-28

*In re Chicken Antitrust Litig.*,
    669 F.2d 228 (5th Cir. 1982) ...................................................... 18

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...................................... 13

*In re Mego Fin. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ...................................................... 11

*In re Pac. Enter. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ........................................................ 20

*In re Painewebber Ltd. P'ships Litig.*,
    171 F.R.D 104 (S.D.N.Y. 1997)................................................ 20

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
    MDL Docket No. 07-cv-1841-EMC, 2011 WL 3352460
    (N.D. Cal. Aug. 2, 2011) ............................................................ 31

*Johns v. Bayer Corp.*,
    280 F.R.D. 551 (S.D. Cal. 2012) ............................................... 27

*Kyne v. Ritz-Carlton Hotel, L.L.C.*,
    Civil No. 08-cv-00530-ACK-RLP, 2011WL 2938502
    (D. Haw. June 27, 2011)............................................................. 26

*Larsen v. Trader Joe's Co.*,
    Civil No. 11-cv-05188-WHO, 2014 WL 3404531
    (N.D. Cal. 2014) ......................................................................... 21

*Linney v. Cellular Alaska P'ship,*
    151 F.3d 1234 (9th Cir. 1998) .................................................................. 18

*Lundell v. Dell, Inc.*,
    Civil No. 05-cv-3970-JWRS, 2006 WL 3507938
    (N.D. Cal. Dec. 5, 2006).......................................................................... 11

*Misra* v. *Decision One Mortg. Co.*,
    Civil No. 07-cv-0994-DOC, 2009 WL 4581276
    (C.D. Cal. Apr. 13, 2009) .................................................................. 14, 19

*Morgan v. United Parcel Serv. of Am.,*
    160 F.R.D. 349 (E.D. Mo. 1996)............................................................. 26

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004).....................................................15, 20-21

*Nigh v. Humphreys Pharmacal, Inc.*,
    Civil No. 12-cv-2714-MMA-DHB, 2013 WL 5995382
    (S.D. Cal. Oct. 23, 2013) ...........................................12, 16, 20, 24-25, 27

*Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ............................................................. 12, 17

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................. 12, 30

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ..................................................................9

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) .................................................................. 25

*Wadsworth v. KSL Grand Wailea Resort, Inc.*,
    Civil No. 08-cv-00527-ACK-RLP, 2011 WL 2938469
    (D. Haw. June 27, 2011)......................................................................... 26

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)............................................................................ 23

**RULES**

Federal Rules of Civil Procedure

Rule 23 ....................................................................................... 22, 23, 30, 31
Rule 23(a) ........................................................................................... 22, 23, 28
Rule 23(a)(2) ............................................................................................. 23, 24
Rule 23(a)(3) ................................................................................................... 24
Rule 23(a)(4) ................................................................................................... 25
Rule 23(b) ....................................................................................................... 22
Rule 23(b)(3) ............................................................................... 23, 26, 27, 28, 29
Rule 23(e) .................................................................................................... 1, 28
Rule 23(e)(1) .................................................................................................. 29
Rule 23(e)(2) .................................................................................................. 11

Plaintiffs Denise Howerton, Erin Calderon, Ruth Pasarell, Molly Martin, and Lauren Barry (collectively, "Plaintiffs") respectfully submit this unopposed Memorandum of Law in Support of their Motion for Final Approval of Class Action Settlement and Request for Entry of Order and Final Judgment.  Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs seek the entry of an Order:  (i) granting final approval of the Settlement Agreement, ECF No. 92-3; (ii) confirming certification of the Settlement Class; and (iii) entering an Order and Final Judgment in this action.

## I.    PRELIMINARY STATEMENT

Following protracted arm's-length settlement negotiations over the course of nineteen months, the Parties[1] are positioned to achieve an excellent settlement in this class action litigation over whether reasonable consumers would be misled by the "natural" labeling of Cargill, Incorporated's ("Cargill") Truvia® Natural Sweetener products.

Through hard work and diligent efforts, the Parties were able to reach the Settlement presently before this Court.  Plaintiffs' main objective in filing their lawsuits was to remedy the alleged deception in Cargill's marketing and labeling of the Truvia Consumer Products—which they have now achieved.    The

---

[1] All capitalized terms referenced in this Memorandum have the same meaning as in the Settlement Agreement, ECF No. 92-3.

Settlement requires Cargill to reimburse consumers from a $6.1 million common fund, as well as to make substantive changes to the advertising of the Truvia Consumer Products.

On July 24, 2014, the Court granted Preliminary Approval of the Settlement, allowing notice to be disseminated to Settlement Class Members.  ECF No. 97. Since that time, Plaintiffs' Counsel have completed the Notice Plan the Court approved.  ECF No. 92-6.   As of September 10, 2014, the overall web-based notice campaign has delivered more than an estimated 82.8 million web impressions and was displayed to over forty-five million readers via the print publications.[2]  Dahl. Decl., ¶ 23.   As of September 10, 2014, there have been a total of 26,192 claims filed, putting the estimated claim rate in line with the projection at Preliminary Approval. *Id.* at ¶¶ 32-33.  Plaintiffs submit this Motion for Final Approval of Class Action Settlement to bring closure to this matter.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Brief Summary of Plaintiffs' Claims

Plaintiffs provided a full summary of the allegations in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary

---

[2] Details of the implementation of the Notice Plan are found in the Declaration of Jeffrey D. Dahl with Respect to Implementation of the Notice Plan and Performance of Required Settlement Administration Activities ("Dahl Decl."), filed concurrently herewith.

Approval of Class Action Settlement, ECF No. 92.  The facts provided therein are incorporated here, and the following merely provides a brief background for the Court's convenience.  This case arises out of alleged deceptive and misleading marketing of the Truvia Consumer Products. Howerton Compl., ¶ 1 (ECF No. 80); Martin Compl., ¶ 1 (ECF No. 1).  Cargill labels, advertises, and otherwise markets the Truvia Consumer Products, and their ingredients, as natural sweeteners. Howerton Compl., ¶¶ 5-6, 16-20; Martin Compl., ¶¶ 23-31.

Plaintiffs claim the labeling of the Truvia Consumer Products as natural sweeteners is false and deceives a reasonable consumer and they allege specifically that Cargill mischaracterizes stevia leaf extract and erythritol as natural due to way they are processed.  Howerton Compl., ¶¶ 19-20; Martin Compl., ¶ 40.  By this conduct, Plaintiffs allege Cargill injured consumers and violated consumer protection statutes in Hawaii, California, Florida and Minnesota, among other laws.  Howerton Compl., ¶¶ 69-168; Martin Compl., ¶¶ 73-150.

### B.    The Court Granted Preliminary Approval

On July 24, 2014, the Court entered an order preliminarily certifying the class and preliminarily approving the settlement. ECF No. 97.  In the order, the Court named Scott+Scott, Attorneys at Law, LLP, Halunen & Associates, and Reese Richman LLP ("Class Counsel") as counsel for the Settlement Class. *Id.* The Court appointed Plaintiffs as the Class Representatives. *Id.*

3

## III.   NOTICE TO THE SETTLEMENT CLASS

The Notice Plan was implemented in accordance with the terms the Court approved. ECF No. 97.  The Notice Plan was developed using targeted methods universally employed in the advertising industry to ensure adequate reach to the Class Members based on how the public consumes media in today's world.  *See* Dahl Decl., ¶ 38. On July 29, 2014, the Settlement Website went live.  *Id.*at ¶ 25. Following the establishment of the Settlement Website, on Aug. 7, 2014, direct notice was provided to known Settlement Class Members by mailing them the Long-Form Notice and Claim Form. *Id.* at ¶ 11.

The Settlement was publicized through Web-Based Notice, utilizing banner-style notices with a link to the Settlement Sebsite.  *Id.*at ¶¶ 15-16. The Web-Based Notice took advantage of specific keyword search terms in major search engines and also appeared on Facebook. *Id.* at ¶¶ 18-21. Internet based ads appeared and/or will appear on the FRWD Reach Channel and Foodie Sites website networks from August 7, 2014, to December 1, 2014. *Id.* at ¶ 16. The Web-Based Notice campaign has thus far delivered over 82.8 million impressions, *i.e.*, opportunities for potential Settlement Class Members to click to view the Settlement Website. *Id.* at ¶ 23. The Notice Plan also used "earned media," which publicized the Settlement through press releases distributed over PR Newswire, reaching approximately 5,815 media outlets and 5,400 websites. *Id.* at ¶ 22.

The Notice Plan also included a robust Print Publication Notice program, which included publication in two targeted high-readership consumer publications with a combined circulation of 45 million. *Id*. at ¶ 14. These Print Publication Notice sources were chosen based on market research on the demographics of consumers who purchased the Truvia Consumer Products. *Id.* at ¶ 13. The Print Publication Notice directed Settlement Class Members to the Settlement Website or, in the alternative, to a toll-free number they could call for information, and it also advised them that they could submit a Claim Form by mail or on-line. *Id*., ¶¶ 28-29.

The Settlement Website address appeared on all of the printed notice pieces, and was hyper-linked where a notice piece appeared on the Internet. *Id.* at ¶ 25. The Settlement Website provides Settlement Class Members with general information about the Settlement, answers to frequently asked questions, a means to submit an electronic Claim Form or download a Claim Form, important date and deadline information, a summary of Settlement benefits, a means by which to review and print copies of certain Settlement documents (including the Long-Form Notice), a link to contact the Settlement Administrator via email, and information about how to contact the Settlement Administrator via telephone. *Id.* at ¶ 26.

In addition, on July 29, 2014, a toll-free phone number was established, allowing Settlement Class Members to call and request that a Long-Form Notice

be mailed to them or listen to frequently asked questions. *Id.* at ¶ 28. As of September 10, 2014, there have been 282 calls to the toll free number. *Id.* at ¶ 30.

The details of the Notice Plan, including the methodology underlying its design, were explained in detail in the Affidavit of Jeffrey D. Dahl with Respect to Settlement Notice Plan, ECF No. 92-6. Use of the Internet and traditional methods for publication maximized the effect of the dollars spent to contact the Settlement Class Members. Publication through the Internet had the further advantage of immediately linking the reader to the Settlement Website and the Claim Form.

The data reflects the success of the Notice Plan: as of September 10 2014, 26,192 Settlement Class Members have submitted a Claim. Dahl Decl., ¶ 32. Based on the current claims filing rate, Jeffrey Dahl expects there will be between 75,000 and 100,000 claims filed, which represents 1.5% to 2.0% of the estimated Settlement Class Members. *Id.* at ¶ 33.

## IV.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, AND THE COURT SHOULD GRANT FINAL APPROVAL

Plaintiffs believe the Settlement, which includes a Settlement Fund totaling $6.1 million and provides meaningful injunctive relief to Truvia consumers nationwide, is fair, reasonable, and adequate.  Under the terms of the Settlement Agreement, the Settlement Class Members will receive, at a minimum, $7.50 in a cash refund or $18.00 in vouchers, and could receive up to $45.00 in cash or vouchers valued at up to $90.00—a significant recovery given the premium price

damage model that would likely be employed if litigation continued. In addition, Cargill has agreed to significant label and website changes that will better educate consumers as to the meaning of the Truvia Consumer Products' "natural" representations and how Truvia is made. As discussed in greater detail below, the Settlement Agreement provides a close approximation of the best relief available at trial while avoiding costly and time consuming litigation.

Class Counsel have worked diligently to reach the Settlement and believe the claims resolved in the Settlement have merit. Declaration of Joseph P. Guglielmo in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Request for Entry of Final Judgment and Motion for Approval of Attorneys' Fee Award, Expense Reimbursement, and Incentive Awards ("Guglielmo Decl."), ¶ 24; Declaration of Clayton D. Halunen in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Request for Entry of Final Judgment and Motion for Approval of Attorneys' Fee Award, Expense Reimbursement, and Incentive Awards ("Halunen Decl."), ¶ 36; Declaration of Michael R. Reese in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Request for Entry of Final Judgment and Motion for Approval of Attorneys' Fee Award, Expense Reimbursement, and Incentive Awards ("Reese Decl."), ¶¶ 36. Plaintiffs and their counsel recognize, however, the expense and length of continued proceedings necessary to prosecute

7

the claims through trial and appeal and have taken into account the uncertain outcome and risk of litigation as well as the difficulties and delays inherent in such litigation.  Guglielmo Decl., ¶ 24-26; Halunen Decl., ¶ 36-38; Reese Decl. ¶ 36-38. Class Counsel have evaluated the various state consumer protection laws, as well as the legal landscape, to determine the strength of the claims, the likelihood of success, and the parameters within which courts have assessed settlements similar to the instant Settlement.  Guglielmo Decl., ¶ 13; Halunen Decl., ¶ 7; Reese Decl. ¶ 17.  Based on the above-described evaluation, Class Counsel have determined that the Settlement is fair, reasonable, and adequate and in the best interest of the Settlement Class.   Guglielmo Decl., ¶ 25; Halunen Decl., ¶ 37; Reese Decl. ¶ 37.

### A.    Cargill Must Refund Settlement Class Members

A substantial portion of the Settlement Fund will go towards the reimbursement of Settlement Class Members for their purchases. Settlement Class Members may choose between two forms of monetary recovery: their first option is to receive cash in an amount ranging from $7.50 to $45.00. §§4.3, 4.4.[3] Alternatively, they can receive vouchers valued from $18.00 to $90.00. *Id.* Under either scenario, the reimbursement is based on the dollar amount or the number of purchases during the Class Period.  *Id.*

---

[3] Unless otherwise specified, all section (§) references in this Memorandum are to the Settlement Agreement, ECF No. 92-3.

Following the close of the claims period, should any funds remain in the Settlement Fund, those funds will be distributed by increasing each claim proportionately on a *pro rata* basis up to one hundred percent (100%) of the original claim amount. §4.6(a).  Conversely, if the Settlement Fund is insufficient to cover all valid Claims and all other costs and fees, each Claim shall be reduced on a *pro rata* basis.  §4.6(b).

Should funds remain in the Settlement Fund following the *pro rata* claims increase, the remaining funds will be distributed, upon the approval of the Court, pursuant to the *cy pres* doctrine to the following non-profit organizations: National Consumer Law Center and Consumer Federation of America.  §4.6(c); *see Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990) (recognizing *cy pres* doctrine).  No Residual Funds will revert to Cargill.  §4.6(c).

## B.     Cargill Must Change Its Business Practices So As To Be Transparent in Labeling the Truvia Consumer Products

In addition to monetary relief, Cargill has agreed to change its business practices so as to prevent consumer deception regarding the "natural" label. A significant portion of the relief requested in each complaint was an injunction requiring label changes.

According to the terms of the Settlement Agreement, Cargill will be required to clarify its "Nature's Calorie-Free Sweetener," and "Truvia Natural Sweetener provides the same sweetness as two teaspoons of sugar" statements, add language

9

directing consumers to a new website FAQ as well as remove the phrase "similar to making tea" on all Truvia Consumer Products packaging.  §§4.7, 4.8. Further, Cargill will be required to clarify its descriptions of erythritol, as well as make significant changes to the Truvia.com website to better explain to consumers the manufacturing processes involved. §§4.7, 4.8. In total, these agreed-to changes are sufficient to prevent consumers from being deceived by the "natural" claims. While the Truvia® Natural Sweetener brand still exists, the modifications to the labeling, which will be viewed at the point of sale, and substantial additions to the Truvia.com/FAQ website remedy any confusion reasonable consumers may have with regard to Cargill's "natural" claims.   This injunctive relief provides consumers with significant information at the point of sale to make their own determination as to whether they deem the Truvia Consumer Products "natural." As such, the Settlement achieves the injunctive remedies Plaintiffs originally sought.

C.    **Cargill Will Pay Notice and Administration Costs, Plaintiffs' Incentive Awards, and Court-Awarded Attorneys' Fees and Litigation Costs**

To date, costs of class notice and administration have totaled $275,484.66, and this is estimated to be $515,515.00 by the end of the claims period. Dahl Decl., ¶ 37. Class Counsel may apply for an award of reasonable Attorney's Fees and Expenses not to exceed 30% of the total sum of the Administration Fund and

Settlement Fund ($1.83 million), and an Incentive Award to each Plaintiff of up to $2,000.00. §§8.1, 8.5. Defendant agrees not to oppose these applications. *Id.* These issues are briefed more extensively in Plaintiffs' Motion for Approval of Attorneys' Fee Award, Expense Reimbursement and Incentive Awards, filed concurrently with the present motion.

### D.    Legal Standard

"The Ninth Circuit has stated that 'there is an overriding public interest in settling and quieting litigation,' and this is 'particularly true in class action suits.'" *Lundell v. Dell, Inc.*, No. 05-cv-3970-JWRS, 2006 WL 3507938, at *2 (N.D. Cal. Dec. 5, 2006). "[The] decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants, and their strategies, positions, and proof." *In re Mego Fin. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)(citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

A district court may approve a class action settlement only after determining it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, a court should consider:

> (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class

11

members to the proposed settlement.

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

### E.    The Factors Weigh in Favor of Granting Final Approval

#### 1.    The Settlement Is the Result of Arm's-Length Negotiations

The courts of this Circuit "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . and have never prescribed a particular formula by which the outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). A presumption of fairness arises when a settlement is negotiated at arm's length by well-informed counsel. *Nigh v. Humphreys Pharmacal, Inc.*, No. 12-cv-2714-MMA-DHB, 2013 WL 5995382, at *7 (S.D. Cal. Oct. 23, 2013). This Settlement is the product of nearly nineteen months of zealous negotiations in which multiple proposals were exchanged. Guglielmo Decl., ¶ 15; Halunen Decl., ¶ 29; Reese Decl. ¶ 29. The ground work for those proposals was laid through a series of mediations between Cargill and Plaintiffs Martin and Barry under the guidance and direct involvement of former

12

Chief Judge for the District of Minnesota James Rosenbaum (Ret.).   Halunen Decl., ¶¶ 14-15 & 17-18; Reese Decl., ¶¶ 18-21.   Thereafter, hard work of all counsel in the various filed cases resulted in the present Settlement.   Guglielmo Decl., ¶¶ 12; Halunen Decl., ¶ 26; Reese Decl., ¶¶ 29.

"[T]he fact that the settlement agreement was reached in arm's length negotiations after relevant discovery [has] taken place create[s] a presumption that the agreement is fair." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007).   Prior to agreeing to the Settlement, Class Counsel conducted extensive independent investigations, including rigorous confidential settlement-related discovery.   Guglielmo Decl., ¶¶ 3-4,13; Halunen Decl., ¶¶ 6-7,11-13;   Reese Decl. 8-9,14-16.   Having examined the information received through discovery, Class Counsel was able to fully assess the ingredients used and manufacturing methods, thereby providing an understanding of Cargill foundations for its labeling, as well as financial and sales data.   Guglielmo Decl., ¶ 14; Halunen Decl., ¶ 12; Reese Decl. ¶ 15. Thus, this factor weighs in favor of final approval.

## 2. The Strength of Plaintiffs' Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation

"It can be difficult to ascertain with precision the likelihood of success at trial.  The Court cannot and need not determine the merits of the contested facts and legal issues at this stage, and to the extent courts assess this factor, it is to 'determine whether the decision to settle is a good value for a relatively weak case

13

or a sell-out of an extraordinarily strong case.'"  *Misra v. Decision One Mortg. Co.*, No. 07-cv-0994-DOC, 2009 WL 4581276, at *7 (C.D. Cal. Apr. 13, 2009).

In the absence of a settlement now, the Parties will continue to expend a great deal of time and money to litigate this case. Plaintiffs are confident they could obtain nationwide certification of the class, survive summary judgment, win at trial, and prove an appropriate measure of damages. However, Plaintiffs recognize the potential uncertainties in any litigation. Cargill continues to deny that the labels are misleading, and has indicated that, should this matter proceed, it will vigorously oppose class certification on ascertainability, individual reliance, and predominance grounds, as well as vigorously defend the overall merits. Guglielmo Decl., ¶ 24-26; Halunen Decl., ¶ 36-38; Reese Decl. ¶ 36-38. Moreover, even if the case were to proceed to judgment on the merits, any final judgment would likely be appealed which would take significant time and resources. *Id.* These litigation efforts would be costly to all parties and would require significant judicial oversight. *Id.* More importantly, further litigation presents no guarantee for recovery, let alone a recovery greater than that provided by the Settlement. *Id.*

Litigation to date has been costly, and certainly further litigation would be costly, complex, and time-consuming. *Id.* Such litigation could include dispositive motions; contested class certification proceedings and appeals; costly nationwide discovery, including dozens of depositions, interrogatories, and requests for

14

admission and voluminous document production; costly merits and class expert reports and discovery; and trial. *Id.* Each step towards summary judgment and trial would be subject to Cargill's vigorous opposition and appeal. *Id.* One of the hotly contested issues in this action would be consumer perception of "natural" to determine the materiality and deceptiveness of Cargill's labels. *Id.* Such issues would be the subject of competing expert testimony subject to *Daubert* motions. *Id.* The costs and risks associated with continuing to litigate this action would require extensive resources and Court time. *Id.* "Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation." *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). Thus, "'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Id.* at 526. The Settlement confers an excellent result on the Settlement Class Members, as such approval is preferable to undeniably costly and lengthy litigation with an uncertain outcome. *See, e.g., Almodova v. City & Cnty. of Honolulu*, No. 07-cv-00378-DAE-LEK, 2010 WL 1372298, at *5 (D. Haw. Mar. 31, 2010) *report and recommendation adopted*, No.07-cv-00378-DAE-LEK, 2010 WL 1644971 (D. Haw. Apr. 20, 2010) (cost of continued litigation favored approval where significant discovery remained, class representatives not been selected, dispositive

motions had not been filed, and expert witnesses on damages would be necessary).

By reaching this Settlement, the Parties will avoid protracted litigation and will establish means for prompt resolution of the Settlement Class Members' claims. The avenue of relief provided by the Settlement ensures meaningful benefits to Settlement Class Members. Given the alternative of long and complex litigation before this Court, the risks involved in such litigation, including the possibility of further appellate litigation, the availability of prompt relief under the Settlement is highly beneficial to the Class and favors final approval.

### 3.     The Risk of Maintaining Class Action Status through Trial

This case settled before the Court could consider class certification, and the current certification is for settlement purposes only. ECF No. 97, at 5. Defendant has stated that, but for a settlement, it would vigorously contest class certification. Further, even if the class is certified, that certification is not set in stone. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation"). Given this risk, this factor weighs in favor of final approval.  *See, e.g.*, *Nigh*, 2013 WL 5995382, at *7 (finding factor favored approval where defendants represented they would vigorously contest class certification).

### 4.      The Amount Offered in Settlement

"[T]he very essence of a settlement is compromise, 'yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624.  The Ninth Circuit has held that "'it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.'"  *Id.* at 625 (emphasis added).  Thus, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."  *Id.* at 628.  "This is particularly true in cases, such as this, where monetary relief is but one form of the relief requested by the plaintiffs."  *Id.* "It is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Id*.

The Settlement provides Settlement Class Members with a significant refund related to purchases during the Class Period. Given the price premium model that would likely be employed if the matter resolved at trial, the refund provided under the Settlement is significant. Guglielmo Decl., ¶ 23; Halunen Decl., ¶ 35; Reese Decl. ¶ 35. Settlement Class Members' ability to recoup funds is not limited by or dependent on their ability to provide proof of purchase. Further, none of the value of the Settlement reverts to Cargill. This substantial relief weighs heavily in favor

17

of final approval of the Settlement.

In addition to monetary relief, the Settlement specifically addresses the alleged deceptive practices. Cargill has agreed to clarify its "Nature's Calorie-Free Sweetener" and "Truvia Natural Sweetener provides the same sweetness as two teaspoons of sugar" statements, as well as remove the phrase "similar to making tea" on all Truvia Consumer Products packaging.  §§4.7, 4.8. Further, Cargill will be required to clarify the manufacturing process for erythritol on the labeling, as well as make significant changes to the Truvia.com website to provide consumers with access to information about how Truvia and its ingredients are made. §§4.7, 4.8. In total, these changes include labeling changes at the point of sale and reference and access to additional information, which are sufficient to prevent consumers from being deceived by the "natural" claims.

Given the clarification of the label through the agreed-upon injunctive relief, as well as the significant monetary relief, the Settlement provides substantial benefits to the class while avoiding the risk and expense of further litigation.

### 5.    The Stage of the Proceedings

"In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239 (citing *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).

This is especially true "where there has been sufficient information sharing and cooperation in providing access to necessary data[.]" *Misra*, 2009 WL 4581276, at *8. "What is required is that 'sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently.'" *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (citing Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2013)).

Class Counsel conducted thorough pre-litigation investigations of the matter, as well as exchanged extensive settlement-related discovery prior to and during the settlement process. Guglielmo Decl., ¶ 3-4,13; Halunen Decl., ¶ 6-7,11-13; Reese Decl. ¶ 8-9,14-16. Through that discovery, Class Counsel obtained a greater understanding of the marketing, labeling, and manufacturing of Truvia Consumer Products as well as their pricing and sales. Guglielmo Decl., ¶ 14; Halunen Decl., ¶ 12; Reese Decl., ¶ 15. Further, Class Counsel extensively investigated the ingredients in the Truvia Consumer Products, including the methods for producing Rebaudioside A and erythritol, as well as the use of dextrose derived from genetically modified corn as a feedstock in the erythritol production process. Guglielmo Decl., ¶¶ 3-4; Halunen Decl., ¶ 6; Reese Decl., ¶ 9. Finally, Class Counsel examined the profit and loss statements of the Truvia Consumer Products in order to better understand the size of the Class and the possible damages should the matter proceed to trial. Guglielmo Decl., ¶ 12; Halunen Decl., ¶ 11; Reese

Decl., ¶ 14. It was against this backdrop of extensive discovery that Class Counsel negotiated and agreed to the Settlement. Thus, this factor also weighs in favor of final approval. *See, e.g.*, *Nigh*, 2013 WL 5995382, at *7.

### 6.    The Experience and Views of Class Counsel

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528 (citing *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D 104, 125 (S.D.N.Y. 1997)). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Class Counsel are experienced class action litigators with a history of success in similar false advertising litigation. Guglielmo Decl., ¶ 28, Ex. A; Halunen Decl., ¶ 41, Ex. A.; Reese Decl., ¶ 41, Ex. A. Class Counsel worked diligently to secure the best possible result for the Settlement Class Members. It is the unambiguous opinion of all counsel that this Settlement is fair, reasonable and adequate and ask that it be finally approved. Guglielmo Decl., ¶ 25; Halunen Decl., ¶ 37; Reese Decl., ¶ 37. Thus, this factor weighs in favor of final approval.

### 7.    The Presence of a Governmental Participant

This factor should not apply to the Court's analysis as there has been no government action in this matter.

## 8.    The Reaction of the Class Members to the Settlement

Courts have recognized that a favorable reaction by class members strongly supports final approval of the settlement. *See Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529 ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed settlement action are favorable to the class members").

The reaction of the Settlement Class Members has been overwhelmingly positive. As of September 10, 2014, only one Settlement Class Member has opted out, and there have been no objections. Dahl Decl., ¶ 35-36.[4] The response of the Settlement Class Members strongly supports final approval. *See e.g.*, *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of a class settlement where 90,000 class members were given notice and only 45 objected); *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *6 (N.D. Cal. 2014) (approving class settlement about natural foods where 23 class members opted out, and 17 objected).

In sum, the Settlement achieves the primary relief the Class would have pursued at trial and avoids the risks associated with possible adverse rulings if the

---

[4] The deadline for submission of objections is September 26, 2014. ECF No. 97, at 19. Discussion of the issues raised in any objections will be briefed in Class Counsel's response on October 20, 2014. *Id.*

case were litigated.  Accordingly, the Court should finally approve the Settlement.

## V.   THE COURT SHOULD CONFIRM CERTIFICATION OF THE SETTLEMENT CLASS

### A.   The Settlement Class

For settlement purposes only, Plaintiffs request that the Court, pursuant to

Rule 23, confirm the certification of the Settlement Class defined as:

> All persons who, during the Class Period (July 1, 2008 to July 24, 2014), both resided in the United States and purchased in the United States any of the Truvia Consumer Products for their household use or personal consumption and not for resale. Excluded from the Settlement Class are: (a) Cargill's board members or executive-level officers, including its attorneys; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Settlement Class in accordance with the procedures approved by the Court.

§2.29. The term "Truvia Consumer Products" is defined in the Settlement

Agreement. §2.15. As discussed below, the Settlement Class satisfies all of the

Rule 23 certification requirements.

### B.   Legal Standard

To certify the Settlement Class, the Rule 23(a) and at least one prong of the

Rule 23(b) criteria need to be satisfied.  *See Amchem Prods., Inc. v. Windsor*, 521

U.S. 591, 614 (1997).  Rule 23(a) provides that an action may be maintained as a

class action if: "(1) the class is so numerous that joinder of all members is

impracticable, (2) there are questions of law or fact common to the class, (3) the

claims or defenses of the representative parties are typical of the claims or defenses

of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  As is relevant here, the Rule 23(b)(3) requirements have been distilled into two general elements, commonly referred to as the "predominance" and "superiority" requirements.  The Settlement Class satisfies each Rule 23 requirement.

### C.    The Settlement Class Satisfies the Requirements of Rule 23(a)

### 1.    The Class Is Sufficiently Numerous

The Rule 23(a) numerosity requirement "is met when a class includes at least 40 members." *Baker v. Castle & Cooke Homes Hawaii, Inc*., No. 11-cv-00616-SOM-RLP, 2014 WL 1669131, at *4 (D. Haw. Jan. 31, 2014).  This is easily met here, as the class consists of approximately 5 million consumers.  ECF No. 92-6, ¶ 11.

### 2.    Common Questions of Law and Fact Exist

For Plaintiffs to maintain a class action there must be "common questions of law or fact among members of the class." Fed. R. Civ. P. 23(a)(2).  "Th[e] common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  "The key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will 'generate common *answers* apt to

drive the resolution of the litigation." *Abdullah v. U.S. Sec. Assoc., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Wal-Mart*, 131 S.Ct. at 2551) (emphasis in original).

The commonality element is easily satisfied here because Cargill has engaged in the same conduct on a class-wide basis, including making identical statements to each member of the Class on its product packaging. The questions of law and fact common to the Class include whether Defendant's marketing of the Truvia Consumer Products is misleading and deceptive. These common issues of law and fact satisfy Rule 23(a)(2)'s commonality test. *See, e.g.*, *Nigh*, 2013 WL 5995382, at *4.

### 3.    Plaintiffs' Claims Are Typical of Those of the Class

Rule 23(a)(3) requires "the claims and defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Representative claims are typical if they are "reasonably coextensive with those of the absent class members; they need not be substantially identical." *Dukes v. Walmart, Inc.*, 509 F.3d 1168, 1184 (9th Cir. 2007).

Plaintiffs' claims are typical of the Class because as reasonable consumers, they assert and seek the same remedy arising from the same course of conduct— Cargill's uniform, allegedly deceptive marketing of the Truvia Consumer Products. Plaintiffs and the Settlement Class Members were all exposed to the same alleged

24

misrepresentations, suffered similar damages as a result of the alleged misrepresentations, and seek relief for the same alleged conduct. Plaintiffs' claims are identical to those of the Settlement Class. Therefore, the typicality requirement is met. *Nigh*, 2013 WL 5995382, at *4.

### 4. Adequate Representation Is Satisfied

Finally, Plaintiffs must demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit established a two prong test for this requirement: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co*., 327 F.3d 938, 957 (9th Cir. 2003). Absent evidence to the contrary, a proposed class representative's adequacy of representation is presumed. *Californians for Disability Rights, Inc. v. California Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008).

Here, Plaintiffs are members of the Settlement Class that the Court preliminarily certified on July 24, 2014. ECF No. 97. Plaintiffs' interests are fully aligned with those of the Settlement Class Members, since they bring the same claims for similar remedies under the same legal theories. Thus, Plaintiffs share the same claims and interest in obtaining relief as all other Settlement Class Members and have no conflicts of interests with other Settlement Class Members. Plaintiffs

have demonstrated their adequacy by diligently advancing this litigation, including achievement of the Settlement that is presently before the Court. Guglielmo Decl., ¶¶ 62-64; Halunen Decl., ¶¶ 75-77. Further, Class Counsel have the requisite expertise as they have qualified as lead counsel in other class actions, and have a proven track record of successful prosecution of significant class actions. Guglielmo Decl., ¶ 28, Ex. A; Halunen Decl., ¶ 41, Ex. A.; Reese Decl., ¶ 41, Ex. A. Indeed, as with the proposed representatives themselves, "'[i]n the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the class action.'"  *Halbach v. Great-W. Life & Annuity Ins. Co.*, No. 4:05-cv-02399-ERW, 2007 WL 1018658, at *5 (E.D. Mo. Apr. 2, 2007) (citing *Morgan v. United Parcel Serv. of Am.*, 169 F.R.D. 349, 357 (E.D. Mo. 1996)).[5] Thus, the adequacy requirement is met.

### D.     The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Plaintiffs seek to confirm the certification of the Settlement Class pursuant to Rule 23(b)(3), as: (1) common questions of law or fact will predominate over questions affecting only individual members; and (2) a class action is "superior to

---

[5] *See also Cabbat v. Philip Morris USA, Inc.*, No. 10-cv-00162- DKW/BMK, 2014 WL 32172, at *8 (D. Haw. Jan. 6, 2014); *Wadsworth v. KSL Grand Wailea Resort, Inc.*, No. 08-cv-00527-ACK-RLP, 2011 WL 2938469, at *3 (D. Haw. June 27, 2011); *Kyne v. Ritz-Carlton Hotel, L.L.C.*, No. 08-cv-00530-ACK-RLP, 2011WL 2938502, at *3 (D. Haw. June 27, 2011).

other available methods" of adjudicating the case.  Fed. R. Civ. P 23(b)(3).

### 1.    Common Legal and Factual Questions Predominate

With regard to Rule 23(b)(3) predominance, the court analyzes whether the "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  "Predominance is a test readily met in certain cases alleging consumer . . . fraud." *Id.* at 625.

In this matter, common issues of law and fact readily predominate. Plaintiffs allege Settlement Class Members are entitled to the same legal remedies based on the same alleged wrongdoing—exposure to the same misrepresentation. *See Johns v. Bayer Corp.*, 280 F.R.D. 551, 558 (S.D. Cal. 2012) ("[W]hen plaintiffs are exposed to a common advertising campaign, common issues predominate"). These issues predominate because they would have to be decided in every trial brought by individual Settlement Class Members and can be proven or disproven with the same evidence. *See Hanlon*, 150 F.3d at 1022.  Thus, predominance is satisfied. *Nigh*, 2013 WL 5995382, at *5.

### 2.    A Class Action Is the Superior Means to Adjudicate the Claims

Rule 23(b)(3) sets forth factors for determining whether "a class action [is] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  These factors include: "(A) the class members' interest in individually controlling separate actions; (B) the extent and

nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing the class action." *Id.*

Application of the Rule 23(b)(3)'s "superiority" factors shows that a class action is the preferred procedure for settling this dispute.  First, several actions have been filed during the course of this litigation; however, none of them have been on an individual basis. As such, the Settlement Class Members have shown no interest in litigating this matter on an individual basis. Second, Defendant has made clear that should this Settlement not be approved, it intends to vigorously defend against the claims.  Third, having examined the matter, several courts have determined that the present venue is the most desirable for conducting this action. Finally, given the vast experience of Class Counsel in conducting class actions, and the predominance of the legal and factual questions involved in the current case, management of the class would not be difficult.  Given the average retail price of the Truvia Consumer Products, judicial and economic efficiency favor resolution as a class action. *Hanlon*, 150 F.3d at 1023.  In sum, the Court should confirm certification of the Settlement Class under Rule 23(a) and (b)(3).

## VI.    NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF DUE PROCESS

Rule 23(e) provides that "[t]he court must direct notice in a reasonable

manner to all class members who would be bound by" a Settlement. Fed. R. Civ. P. 23(e)(1). In addition, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

In this circuit, "[n]otice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Chruchill Vill.*, 361 F.3d at 575.

### A.    The Method of Notice was Appropriate

The method for providing notice to Settlement Class Members was "reasonable" and, therefore, met the due process requirements. The Truvia Consumer Products were small dollar, over-the-counter retail purchases, and there was no way to easily identify all individual Settlement Class Members. Because Cargill sells few Truvia Consumer Products directly to consumers, Cargill does not have contact information for most Settlement Class Members. Therefore, the Notice included direct notice to the potential Settlement Class Members for whom Cargill had contact information, as well as publishing the Notice in targeted sources that directed Settlement Class Members to various other methods of obtaining information.

Additionally, the Notice was provided to Settlement Class Members so that

they had sufficient time to decide whether to participate in the settlement, object, or opt out.  Courts routinely find that similar comprehensive notice programs meet the requirements of due process and Rule 23.  *See, e.g.*, *Arnold v. Fitflop USA, LLC*, No. 11-cv-0973-KSC, 2014 WL 1670133, at \*4-5 (S.D. Cal. Apr. 28, 2014).

### B.   The Content of Notice Was Adequate

Notice provides "sufficient detail" where it apprises Settlement Class Members of the essential terms and conditions of the settlement, advises that a majority of class representatives approve of the settlement, and describes the aggregate amount of the settlement fund and the plan for its allocation. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).

Here, the Notice provided "sufficient detail."  Together, the Long-Form Notice, and the Short-Form Notice defined the Settlement Class, explained all Settlement Class Member rights, releases, and applicable deadlines, and described in detail the injunctive and monetary terms of the Settlement, including the procedures for allocating and distributing Settlement funds among the Settlement Class Members.  They plainly indicated the time and place of the hearing to consider approval of the settlement and the method for objecting to or opting out of the Settlement.  They detailed the provisions for payment of attorneys' fees and incentive awards to the class representatives, and provided contact information for Class Counsel.

Collectively, the Long-Form Notice and the Short-Form Notice comported with settlement notices upheld in other cases. *See, e.g.*, *In re Wells Fargo Loan Processor Overtime Pay Litig*., MDL Docket No. 07-cv-1841-EMC, 2011 WL 3352460, at *4 (N.D. Cal. Aug. 2, 2011) (notice was adequate where "[i]t disclosed all material elements of the settlement, including class members' release of claims, their ability to opt out or object to the settlement, the amount of incentive awards and attorneys' fees sought, and estimates of the award members could expect to receive."). Thus, the Notice provided sufficient detail to satisfy the content requirements of Rule 23.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: grant final approval of the Settlement; confirm certification of the Settlement Class; and enter an Order and Final Judgment in this action.

DATED: September 12, 2014          HALUNEN & ASSOCIATES

*/s/ Melissa Wolchansky*
Clayton D. Halunen (*pro hac vice*)
Melissa Wolchansky (*pro hac vice*)
1650 IDS Center
80 S 8th Street
Minneapolis, Minnesota  55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
halunen@halunenlaw.com
wolchansky@halunenlaw.com

31

REESE RICHMAN LLP

*/s/ Michael R. Reese*
Michael R. Reese (*pro hac vice*)
Kim E. Richman (*pro hac vice*)
875 Avenue of the Americas, 18th Floor
New York, New York  10001
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272
mreese@reeserichman.com
krichman.com

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

*/s/ Joseph P. Guglielmo*
Joseph P. Guglielmo (*pro hac vice*)
Erin Green Comite (*pro hac vice*)
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com

*Counsel for Plaintiffs Howerton, Calderon and Pasarell and the Proposed Class*

Lawrence W. Cohn
Attorney at Law
75-109 Lolo Lane
Kailua Kona, HI 96740
Telephone:  (808) 324-1611
Facsimile:  (808) 322-6168
elcohnhead@hawaii.rr.com

E. Kirk Wood
WOOD LAW FIRM, LLC
P. O. Box 382434
Birmingham, Alabama 35238-2434

32

Telephone:  (205) 908-4906
Facsimile:  (866) 747-3905
ekirkwood1@bellsouth.net

Greg L. Davis
DAVIS & TALIAFERRO
7031 Halcyon Park Drive
Montgomery, AL 36117
Telephone: 334-832-9080
Facsimile: 334-409-7001
gldavis@knology.net

*Additional Counsel for Plaintiff Howerton*

Jared H. Beck
BECK & LEE TRIAL LAWYERS
66 West Flagler Street, Suite 1000
Miami, Florida 33130
Telephone: (305) 789-0072
Facsimile: (786) 664-3334
jared@beckandlee.com

*Additional Counsel for Plaintiffs Howerton and Pasarell*

Stanley D. Saltzman
Marcus J. Bradley
William A. Baird
MARLIN & SALTZMAN, LLP
29229 Canwood Street, Suite 208
Agoura Hills, CA  91301
Telephone:  (818) 991-8080
Facsimile:  (818) 991-8081
ssaltzman@marlinsaltzman.com
mbradley@marlinsaltzman.com
tbaird@marlinsaltzman.com

*Additional Counsel for Plaintiff Calderon*

33

BICKERTON DANG LLLP
James J. Bickerton
745 Fort Street
Honolulu, Hawaii 96813
Telephone: (808) 599-3811
Facsimile: (808) 694-3090
bickerton@bsds.com

*Additional Counsel for Plaintiffs Martin and Barry*